UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/21/2020__
```

---------------------------------------------------------X
                                              :
KRISHNA DASS,                                 :
                                              :
                            Plaintiff,        :
                                              :                    18-CV-11325 (VSB)
                                              :
            - against -                       :
                                              :                    **OPINION & ORDER**
                                              :
                                              :
THE CITY UNIVERSITY OF NEW YORK,              :
*as operators of Eugenio Maria de Hostos*    :
*Community College*, et al.                   :
                                              :
                            Defendants.       :
                                              :
---------------------------------------------------------X

Appearances:

Todd Jay Krouner
Law Office of Todd J. Krouner
Chappaqua, NY
*Counsel for Plaintiff*

Gary Moy
Littler Mendelson, P.C.
New York, NY

Dominique F. Saint-Fort
New York City Law Dept. Office of the Corporation Counsel
New York, NY

*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

        Plaintiff Krishna Dass ("Plaintiff") commenced this action against her employer The City

University of New York ("CUNY"), Hostos Community College ("Hostos"), and CUNY

administrators Nathaniel Cruz, David Gomez, Johanna Gomez, Joshua Rivera, and Eugene Sohn

(the "Individual Defendants," and collectively with Hostos and CUNY, "Defendants").  Before

me is Defendants' motion to dismiss Plaintiff's First Amended Complaint.  (Doc. 29.)  Because Plaintiff adequately pleads a cause of action only on the basis of sex discrimination, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

I.    **Factual Background**[1]

Plaintiff Krishna Dass is a South Asian female of Indian descent who was employed by CUNY as an "Athletic Director" at Hostos Community College—a CUNY two-year community college—from April 17, 2013 until January 15, 2019, when Plaintiff was "constructively terminated."[2]  (FAC  ¶¶ 1, 17–19.)  Plaintiff was the only athletic director at Hostos, but had a staff that included one full time and two part-time employees, which was the smallest staff overseen by an Athletic Director in the CUNY system of colleges.  (*Id.* ¶¶ 24, 30–31, 76.)

Plaintiff's title was Higher Education Associate ("HEA"), although once she met the criteria approximately two years into her employment, Plaintiff sought a reclassification of her position as HEA to the title of Higher Education Officer ("HEO").  (*Id.* ¶¶ 18, 41–42, 70.) Defendant Johanna Gomez—the Assistant Dean of Student Life at Hostos—and Defendant Nathanial Cruz ("Cruz")—Hostos' Vice President for Student Development and Enrollment Affairs—each stated that they would support Plaintiff's reclassification.  (*Id.* ¶ 42.)  However, after Plaintiff's persistent requests to be reclassified to HEO status, Plaintiff's requests were ignored without justification or excuse, and she never received HEO status.  (*Id.* ¶ 70(c)-(k).) Defendant Eugene Sohn ("Sohn")—Hostos' Executive Counsel and Labor Designee—eventually

---

[1] The following facts are taken from the First Amended Complaint, (Doc. 24 ("FAC")).  I assume the factual allegations set forth in the First Amended Complaint to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] Plaintiff describes herself as "functioning as an Athletic Director," (FAC ¶1), and "acting as an Athletic Director" for Hostos, (FAC ¶ 18).  It is not clear whether this wording is just inartful pleading or Plaintiff is attempting to convey that she had the duties of an Athletic Director but not the title.  In any event, for purposes of this motion I accept that Plaintiff was employed as the Athletic Director for Hostos.

indicated to Plaintiff that for over two years, Plaintiff's reclassification paperwork sat on Defendant Cruz's desk, and was never submitted.  (*Id.*)

Plaintiff was the only Athletic Director working for CUNY who was South Asian and of Indian descent, (*id.* ¶ 43), was the only Athletic Director employed by CUNY that did not have HEO status, and was paid substantially less than the other CUNY Athletic Directors, (*id.* ¶¶ 49–62).  In 2016, Plaintiff's salary was approximately $82,299 per year, and by 2018 Plaintiff was earning $97,628 a year.  (*Id.* ¶¶ 22, 65.)  Plaintiff states that had she been granted the reclassification, she would have earned approximately $30,000 more a year.  (*Id.* ¶ 70.)  For example, multiple male Athletic Directors in the CUNY system earned $128,485, as did a non-Indian female Athletic Director.  (*Id.*)  Two other non-Indian female directors were paid $120,480, and $104,461, respectively.  (*Id.* ¶¶ 57, 59.)  One Athletic Director, Ryan McCarthy—who was hired by CUNY in or around June 2017—was promoted to HEO status after approximately one month of employment at CUNY's Bronx Community College campus, and "earned at least $82,090 in 2018."  (*Id.* ¶¶ 61, 63.)  In addition to the above, two male Athletic Directors at other CUNY colleges made $97,628 and $94,248, respectively.  (*Id.* ¶¶ 60–61.)

Plaintiff states that she was qualified for her position, added substantial value as an employee, performed her job in at least a satisfactory manner, and completed tasks for Hostos above and beyond her job description.  (*Id.* ¶¶ 25–40, 44–45.)  In addition to alleging that Defendants failed to adequately compensate her, Plaintiff states that Defendants eventually stripped her of decision-making authority, that she was excluded from department meetings and administrative boards, and that Defendants began corresponding directly with her male subordinates to circumvent her position.  (*Id.* ¶¶ 75–76.)

Plaintiff further states that she was subjected to "harassment by administrators,

including yelling, cursing, [and] insulting," and that she was demeaned and otherwise disrespected by her administrators, such as Defendants Cruz and Sohn, as well as Defendant David Gomez—the President of Hostos—and Defendant Joshua Rivera ("Rivera")—Hostos' Director of Government and External Relations.  (*Id.* ¶¶ 70(n), 71(a).)  During one such occurrence, David Gomez "wielded a bat . . . instilling fear into the Hostos female employees, including the Plaintiff and her union representative."  (*Id.* ¶ 71(b).)

In October 2016, Plaintiff filed a sexual harassment complaint against a Hostos custodian who had barricaded Plaintiff inside a gymnasium closet, demanding "that Plaintiff give him a hug and kiss in order to be allowed to leave the closet."  (*Id.* ¶ 70(o).)  After ten minutes of failed pleas, Plaintiff was coerced into giving the custodian a hug to gain her release.  (*Id.*)  Hostos took no action concerning Plaintiff's complaint.  (*Id.*)

In addition to the above, "[f]rom in or about January 2017, Plaintiff ha[d] suffered [a] disability in the form of adverse health consequences, including exacerbation of her allergic asthma, as a result of the conditions of her office at Hostos, including but not limited to mold, rodent infestation, dust and otherwise unsanitary conditions."  (*Id.* ¶ 74.)  Plaintiff requested to work from home in May 2017, but her requests were denied.  (*Id.* ¶ 104.)  From on or about June 28, 2017, through on or about November 16, 2017, Plaintiff took medical leave for her disability pursuant to the Family Medical Leave Act.  (*Id.* ¶ 77.)  On October 24, 2017, Plaintiff complained to CUNY about discrimination on the basis of her race, national origin, ethnicity, and sex.  (*Id.* ¶ 76.)  Plaintiff states that when she returned from medical leave, she continued to be excluded from meetings and stripped of decision-making authority, and that her requests for reclassification were ignored, all in retaliation for her complaints.  (*Id*. ¶ 78.)  Ultimately, Plaintiff alleges she "was constructively terminated by the Defendants on January 15, 2019."

(FAC ¶ 19.)

## II.   **Procedural History**

On January 29, 2018, Plaintiff filed a Charge of Discrimination with the U.S. Equal

Employment Opportunity Commission ("EEOC").  (*Id.* ¶ 13; Moy Decl. Ex. A, at 4.)[3]  Her

charge included claims for discrimination on the basis of sex and national origin, and retaliation

and hostile work environment.  (Moy Decl. Ex. A.)  On September 11, 2018, Plaintiff received a

Notice of Right to Sue letter from the EEOC, notifying Plaintiff of her right to sue under, *inter*

*alia*, Title VII, the ADA, and the Equal Pay Act.  (FAC ¶ 14; Moy Decl. Ex. B.)

Plaintiff filed the Complaint in this action on December 6, 2018.[4]  (Doc. 4.)  After

Defendants filed a motion to dismiss the Complaint on March 25, 2019, (Doc. 20), Plaintiff filed

the First Amended Complaint on April 15, 2019, (Doc. 24).  In addition, on April 15, 2019,

Plaintiff filed a rider to her Charge of Discrimination with the EEOC, adding claims for race and

disability discrimination.  (Krouner Decl. Ex. A.)[5]  Defendants filed a motion to dismiss the First

Amended Complaint on June 13, 2019, (Doc. 29), supported by a memorandum of law and a

declaration, (Docs. 30, 31).  On July 12, 2019, Plaintiff filed a memorandum of law in opposition

to Defendants' motion to dismiss, and a declaration.  (Doc. 34.)  Briefing on this motion was

complete when Defendants filed their reply memorandum of law in support of their motion to

dismiss on June 26, 2019.  (Doc. 35.)

---

[3] "Moy Decl." refers to the Declaration of Gary Moy in Support of Defendants' Motion to Dismiss the Amended Complaint, filed May 13, 2019, (Doc. 30).

[4] Plaintiff originally filed her complaint on December 5, 2018, but the document was rejected by the Clerk of Court as deficient.  (Doc. 1.)

[5] "Krouner Decl." refers to the Declaration of Todd J. Krouner in Opposition to Defendants' Motion to Dismiss, filed June 12, 2019, (Doc. 31).

III.    **Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  This standard demands "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor.  *Kassner*, 496 F.3d at 237.  "A complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (internal quotations and citation omitted).  A court "may also consider matters of which judicial notice may be taken" in ruling on a motion to dismiss.  *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*

6

IV.    **Discussion**

Plaintiff alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000(e), *et seq*. ("Title VII"), the Civil Rights Act of 1866, 42 U.S.C. § 1983, *et seq*. ("Section

1983"), the Equal Pay Act of 1963, 29 U.S.C. § 206(d), *et seq*. ("EPA"), the Americans with

Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq*. ("ADA"), the Family and Medical Leave

Act of 1993, 29 U.S.C. 2601, *et seq*. ("FMLA"), New York Law § 290, et seq. ("New York State

Human Rights Law" or "NYSHRL"), and New York City Administrative Code § 8-107 ("New

York City Human Rights Law" or "NYCHRL").

### A.    *Title VII, § 1983, NYSHRL, and NYCHRL Discrimination Claims*

Plaintiff's First cause of action is against Defendant CUNY for sex, race, and national

origin discrimination in violation of Title VII.  (FAC ¶¶ 79–91.)[6]  Plaintiff's Second cause of

action is against Hostos and the Individual Defendants for violations of § 1983.  (FAC ¶¶ 92–

97.)  Plaintiff's Seventh and Eighth causes of action are against Hostos and the Individual

Defendants for sex, race, and national origin discrimination in violation of the NYSHRL and

NYCHRL.  (FAC ¶¶ 132–139.)[7]

### 1.  Pleadings Standards

In *Vega v. Hempstead Union Free School District*, 801 F.3d 72 (2d Cir. 2015), the

Second Circuit refined the pleading standards applicable in a Title VII employment

discrimination case.  *Vega* held that in order to survive a motion to dismiss, "a plaintiff must

plausibly allege that (1) the employer took adverse action against him, and (2) his race, color,

---

[6] Plaintiff concedes that Defendant CUNY is immune from suit for violations under Section 1983, the ADA, FMLA, NYSHRL, and NYCHRL.  (Doc. 34, at 24.)  Accordingly, I only consider the parties' arguments with respect to Defendant CUNY's potential liability under Title VII and the EPA.

[7] Plaintiff's Seventh and Eighth causes of action also allege disability discrimination in violation of the NYSHRL and NYCHRL, which I will assess when considering Plaintiff's Third cause of action for disability discrimination in violation of the ADA.

religion, sex, or national origin was a motivating factor in the employment decision." *Id*. at 87.

"[A] plaintiff need only give plausible support to a minimal inference of discriminatory

motivation." *Id*. at 84 (internal quotation marks omitted).  In light of this standard, "the court

must be mindful of the 'elusive' nature of intentional discrimination." *Id*. at 86.  Because of the

inherently elusive nature of intentional discrimination, a plaintiff must typically "rely on 'bits

and pieces' of information to support an inference of discrimination, *i.e*., a 'mosaic' of

intentional discrimination." *Id*. at 86.  Accordingly, the Second Circuit has stated that "[a]n

inference of discrimination can arise from circumstances including, but not limited to, 'the

employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious

comments about others in the employee's protected group; or the more favorable treatment of

employees not in the protected group; or the sequence of events leading to the plaintiff's

discharge.'" *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz*

*v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

      In addition to Title VII, the Fourteenth Amendment provides public employees with the

right to be "free from discrimination." *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006).

Consequently, public employees aggrieved by discrimination in the terms of their employment

may bring suit under Section 1983 against any responsible persons acting under color of state

law. *Vega*, at 87 (citing *Back v. Hastings on Hudson Union Free Sch. Dist*., 365 F.3d 107, 122–

23 (2d Cir. 2004)). "To state a claim under § 1983, a plaintiff must allege two elements:  (1) the

violation of a right secured by the Constitution and laws of the United States, and (2) the alleged

deprivation was committed by a person acting under color of state law." *Id.* at 87–88 (internal

quotation marks omitted).  "A state employee acting in his official capacity is 'acting under color

of state law.'" *Id.* at 88.  "Once the color of law requirement is met, a plaintiff's equal protection

claim parallels h[er] Title VII claim, except that a § 1983 claim, unlike a Title VII claim, can be brought against an individual." *Id.* (internal quotation marks omitted.) "Thus, for a § 1983 discrimination claim to survive a motion [][to dismiss], a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting 'under color of state law.'" *Id.*

### 2. Application

#### a. CUNY

Plaintiff alleges that she suffered adverse employment actions when CUNY failed to promote her to HEO status, ignored her requests for a promotion, subjected her to harassment and demeaning comments, and undermined her job responsibilities by usurping her role as Athletic Director. (FAC ¶ 70-73.) Importantly, although Plaintiff alleges that CUNY violated her Title VII rights, the basis of her claim involves allegations involving Hostos and its administrators—that her reclassification paperwork was never submitted by Hostos administrators to CUNY for consideration, and that broader instances of discrimination occurred at Hostos resulting in Plaintiff's constructive termination. Thus, Plaintiff's claim is based not on CUNY's actions but on the actions of Hostos and the Individual Defendants. However, "[a] Title VII plaintiff is entitled to succeed, 'even absent evidence of illegitimate bias on the part of the ultimate decision maker," in this case CUNY, "so long as the individual[s] shown to have the impermissible bias played a meaningful role in the [] process" that results in an adverse employment action. *Holcomb v. Iona Coll.*, 521 F.3d 130, 143 (2d Cir. 2008) (quoting *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999)). Here, Plaintiff has plausibly alleged CUNY's violation of Title VII on the basis of Defendant Cruz's and Hostos' failure to even consider Plaintiff's request for a promotion to HEO status, and their attempts to frustrate

her employment and overall job responsibilities, which I discuss below.

b.  Hostos and the Individual Defendants[8]

Based on the allegations in the complaint, Plaintiff adequately states a claim for sex

discrimination against Defendants Hostos and Cruz for their failure to promote Plaintiff or even

consider her reclassification to HEO status, and for their constructive termination of Plaintiff.

Plaintiff has provided the requisite "plausible support to a minimal inference of discriminatory

motivation" regarding these acts.  *Vega*, 801 F.3d at 84.  In particular, Plaintiff has alleged that

despite Defendant Cruz's stating that he would support Plaintiff's reclassification to HEO status,

Cruz never submitted her reclassification paperwork to CUNY, and Plaintiff's repeated requests

for her consideration for HEO status were ignored by Cruz without justification or excuse.  (*Id. ¶*

70(c)-(k).)  Despite her failed requests for a promotion, Plaintiff was never told that that she was

unqualified for a promotion or undeserving of a promotion.  Instead, Plaintiff completed tasks

above and beyond her job duties, and led the Hostos' Women's Basketball Team to a historic

national title—the first women's basketball title throughout the entire CUNY system of

schools—for which Plaintiff was not permitted to even arrange a celebration because of

Defendant Cruz.  (FAC ¶ 70(r).)  Plaintiff has alleged that Cruz regularly conferred with

Plaintiff's male subordinates instead of meeting with Plaintiff, habitually sought to undermine

and usurp Plaintiff's authority as Athletic Director, and regularly yelled at, screamed at, insulted,

demeaned, and disrespected female employees at Hostos.  (*Id. ¶¶* 70-71.)  In addition, Plaintiff's

First Amended Complaint describes in detail an October 2016 incident in which she was sexually

_____

[8] Plaintiff alleges that as employees of Hostos, which is a public school, the Individual Defendants had input into personnel decisions, including her promotion.  (FAC ¶ 20.)  Defendants do not dispute that they were acting under color of state law sufficient to be held liable under Section 1983, but argue that Plaintiff has failed to demonstrate an actual violation of her rights.  (Doc. 35, at 4.)  Accordingly, Plaintiff has satisfied the "under color of state law" element of her Section 1983 claim.

harassed by a custodian, which prompted her to file a formal complaint with human resources at the direction of the Hostos administration.  (*Id.* ¶ 70(o).)  However, Hostos took no action with respect to the complaint.  (*Id.*)

Although Plaintiff's First Amended Complaint is not artfully pled, these factual allegations suffice at this stage in the litigation, and provide sufficient factual content to plausibly draw an inference that Plaintiff suffered adverse employment actions motivated in part by her status as a woman.  Accordingly, Plaintiff's Section 1983 claim can proceed against Defendants Cruz and Hostos.[9]  Because NYSHRL claims are subject to the same standard as Title VII claims, *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007), and because the NYCHRL is construed more broadly in favor of discrimination plaintiffs, *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013), Plaintiff's NYSHRL and NYCHRL claims for sex-based discrimination can also proceed against Defendants Cruz and Hostos.

### B.   *Title VII Retaliation Claim*

Plaintiff's Fourth cause of action is against CUNY for retaliation in violation of Title VII. (FAC ¶¶ 106–15.)  Because Plaintiff does not adequately plead but-for causation to support her retaliation claim, this claim is dismissed.

---

[9] Plaintiff does not provide adequate factual allegations to state a claim against Defendants Gomez, Johanna Gomez, Rivera, and Sohn, nor does she provide sufficient factual content to state a claim based on race or national origin discrimination.  Plaintiff's efforts to allege discrimination in group pleading format, and her conclusory allegations with respect to these other defendants and forms of discrimination, are unavailing.  In contrast to the specific allegations made against Defendant Cruz, the allegations against the other Individual Defendants are not as specific or voluminous, and do not specifically relate to Plaintiff's attempts to seek reclassification or her constructive termination.  For example, although Plaintiff alleges that Defendant Gomez was also disrespectful, failed to allow her to plan a national title celebration, and wielded a bat instilling fear into female employees, (FAC ¶¶ 70–71), these allegations are conclusory and lack detail, and do not establish that Defendant Gomez had any authority over Plaintiff's reclassification application, which Plaintiff alleges was withheld specifically by Defendant Cruz, (FAC ¶ 70(i)).  The allegations are even more sparse with respect to the other individual defendants.

### 1.  Pleadings Standards

"Title VII provides that '[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.'"  *Vega*, at 89–90 (quoting 42 U.S.C. § 2000e–3(a)).  "Thus, for a retaliation claim to survive . . . a motion to dismiss, the plaintiff must plausibly allege that:  (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice."  *Id*. at 90.

Retaliation claims under Title VII require a showing that the protected activity was a "but-for" cause of the adverse employment action.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  A plaintiff need not show that retaliation was the only cause of the employer's action; rather, a plaintiff must only show "that the adverse action would not have occurred in the absence of the retaliatory motive."  *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013).  A plaintiff may establish a claim for retaliation without proving a valid discrimination complaint.  *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990).

### 2.  Application

Plaintiff argues that "as a result of her complaints of discrimination on the basis of race, national origin and/or ethnicity and sex, made on or about October 24, 2017[,] Defendants have retaliated against Plaintiff."  (FAC ¶ 76.)  Plaintiff then pleads a laundry list of alleged adverse employment actions taken against her due to her complaints of discrimination.  (*Id.*; *see also id.* ¶¶ 109-115.)  However, Plaintiff's First Amended Complaint fails to properly allege that these adverse actions would not have occurred in the absence of a retaliatory motive.  Indeed, Plaintiff

claims that she suffered many of these adverse actions as early as January 2017 in retaliation for

her disability, which became exacerbated in January and known to Defendant Hostos in June 28,

2017.  (*Id.* ¶¶ 74–75; 101.)  Moreover, Plaintiff alleges a much broader list of adverse actions,

including the above-mentioned actions, that she suffered "throughout the entirety of [her]

employment" with CUNY.  (*Id.* ¶ 70(a)-(r).)  Plaintiff's allegations thus plainly defeat any

plausible inference that her October 24, 2017 complaints were the but-for cause of any

retaliatory action.  *Cf. Chung v. City Univ. of New York*, 605 F. App'x 20, 23 (2d Cir. 2015)

(quoting *Slattery v. Swiss Reins. Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("Where timing is the

only basis for a claim of retaliation, and gradual adverse job actions began well before the

plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.").

Accordingly, Plaintiff's Title VII retaliation claim is dismissed.

### C.   *Equal Pay Act*

Plaintiff's Fifth cause of action is against CUNY for sex-based wage discrimination in

violation of the EPA.  (FAC ¶¶ 116–120.)  Because Plaintiff has failed to plead sufficient factual

matter permitting a reasonable inference that her job content was substantially equal to higher

paid male CUNY Athletic Directors, her EPA claim is dismissed.

### 1.  Pleadings Standards

"[T]o prove a violation of the EPA, a plaintiff must demonstrate that '(1) the employer

pays different wages to employees of the opposite sex; (2) the employees perform equal work on

jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar

working conditions.'"  *E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254–55 (2d Cir.

2014) (quoting *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999)).[10]  At the pleading stage,

---

[10] "The Equal Pay Act and Title VII must be construed in harmony, particularly where claims made under the two statutes arise out of the same discriminatory pay policies."  *Lavin–McEleney v. Marist Coll.*, 239 F.3d 476, 483 (2d

"a plausible EPA claim must include sufficient factual matter, accepted as true to permit the reasonable inference that the relevant employees' job content was substantially equal." *Id*. at 256 (internal quotation marks omitted).  The standard is "demanding," and requires that a plaintiff "establish that the jobs compared entail common duties or content, and do not simply overlap in titles or classifications." *Id*. at 255.  "[B]road generalizations drawn from job titles, classifications, or divisions, and conclusory assertions of sex discrimination, cannot suffice." *Id*. at 256.

## 2.  Application

Here, Plaintiff "rel[ies] [] entirely on broad generalizations drawn from job titles and divisions," and cannot meet the pleading requirements to state an EPA claim.  *Id.*  Plaintiff alleges that "[a]t all times relevant hereto, CUNY's Athletic Directors' responsibilities included, but were not limited to, oversight of and support for the athletic, academic, social and disciplinary concerns of student-athletes; devising and executing budgets; and directing athletic programming and services."  (FAC ¶ 23.)  Plaintiff further alleges, on information and belief and in a conclusory fashion, that many of the Athletic Directors employed by CUNY were "similarly situated" to Plaintiff, but earned substantially more in pay.  (FAC ¶¶ 46–65.)  As an initial matter, Plaintiff's mere parroting that other employees are "similarly situated" to her coupled with conclusory allegations are insufficient to state an EPA claim.  In any event, Plaintiff's allegations reveal that all of the other Athletic Directors referenced in the complaint worked at different colleges in the CUNY system, which has twenty-five different educational institutions,

---

Cir. 2001).  A "key difference between [the statutes], of course, is that a Title VII disparate treatment claim requires a showing of discriminatory intent, while an Equal Pay Act claim does not."  *Id.*  Because Plaintiff's discrimination claim is based on Defendant Cruz's failure to submit her reclassification paperwork, and later constructive termination, Plaintiff's Title VII claim is different in kind from Plaintiff's allegation that CUNY's pay practices violate the EPA.  I therefore do not find that the adequacy of Plaintiff's complaint with respect to Title VII sex discrimination suffices to state an EPA claim.

and that Plaintiff "served as the only Athletic Director at Hostos." (*Id.* ¶¶ 24, 46–65.) Plaintiff does not allege any facts suggesting that her position, experience, skills, and responsibilities were substantially equal to those of the male Athletic Directors at these different CUNY schools, or that she performed equal work. To the contrary, Plaintiff alleges that her job duties "include[d] tasks and responsibilities outside the scope of the CUNY Athletic Director position," undermining the inference that her job content was substantially equal to that of the other CUNY Athletic Directors. (*Id.* ¶ 25.) Plaintiff also alleges that she had "a smaller staff than any other CUNY Athletic Director," making it plausible that her conditions of employment in the Hostos Athletic Department were materially different from other CUNY schools' departments. (*Id.* ¶ 76(f).)

Plaintiff's claim cannot proceed on these bare allegations of general job descriptions and her belief that other Athletic Directors were "similarly situated," especially given the specific factual allegations indicating that Plaintiff's position, and job responsibilities, were unique. *See Port Auth. of New York & New Jersey*, 768 F.3d at 257 (stating that "bland abstractions— untethered from allegations regarding [the employees'] *actual* job duties—say nothing about whether the [employees] were required to perform 'substantially equal' work"); *Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 519 (S.D.N.Y. 2018) ("Given the complete absence of any factual allegations whatsoever relating to actual job content or working conditions, the Court dismisses Plaintiffs' EPA claims as a matter of law."); *Lehman v. Bergmann Assocs., Inc*., 11 F.Supp.3d 408, 420 (W.D.N.Y. 2014) ("How was her position comparable or substantially similar? What responsibilities did they share? Without these facts, courts routinely dismiss EPA claims pled in this formulaic fashion.").

### D.     *Americans with Disabilities Act*

Plaintiff's Third cause of action is against Hostos for disability discrimination in violation of the ADA.  (FAC ¶¶ 98–105.)  Additionally, Plaintiff's Seventh and Eighth causes of action allege that the Individual Defendants engaged in disability discrimination in violation of the NYSHRL and NYCHRL.  (FAC ¶¶ 132–139.)

### 1.  Pleadings Standards[11]

To state a claim for disability discrimination under the ADA, a plaintiff must properly allege that:  "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of [her] disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 155–56 (2d Cir. 2010).

"Discrimination in violation of the ADA includes, *inter alia*, 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability.'"  *McBride v. BIC Consumer Prods. Mfg. Co., Inc*., 583 F.3d 92, 96 (2d Cir. 2009) (quoting 42 U.S.C. § 12112(b)(5)(A)).  A plaintiff can allege disability discrimination based on her employer's failure to accommodate a disability by satisfying the following elements:  (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.  *McMillan v. City of New York*, 711 F.3d 120, 125–26

---

[11] NYSHRL and NYCHRL claims for failure to provide a reasonable accommodation are governed by standards substantially similar to the federal ADA standards, and therefore I consider Plaintiff's federal, state, and city disability claims in tandem.  *See Noll v. Int'l Bus. Machines Corp*., 787 F.3d 89, 94 (2d Cir. 2015); *Graves v. Finch Pruyn & Co*., 457 F.3d 181, 184 n. 3 (2d Cir. 2006).

(2d Cir. 2013) (citation omitted).  "On the issue of reasonable accommodation, the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits." *Borkowski v. Valley Cent. Sch. Dist.,* 63 F.3d 131, 139 (2d Cir. 1995); *see also McBride,* 583 F.3d at 97 n.3 (noting that "with regard to the reasonableness of a proposed accommodation, a plaintiff bears only a light burden of production that is satisfied if the costs of the accommodation do not on their face obviously exceed the benefits").  However, to state a failure to accommodate claim, Plaintiff must plead sufficient facts to raise the inference "that [an employer's] failure [to provide a reasonable accommodation] was motivated by discriminatory intent." *Novick v. Vill. of Wappingers Falls*, 376 F. Supp. 3d 318, 336–37 (S.D.N.Y. 2019) (quoting *Lyman v. City of New York*, No. 01 Civ. 3789(RWS), 2003 WL 22171518, at *6 (S.D.N.Y. Sept. 19, 2003)).

### 2.  Application

Plaintiff alleges that "[f]rom in or about January 2017, Plaintiff ha[d] suffered [a] disability in the form of adverse health consequences, including exacerbation of her allergic asthma, as a result of the conditions of her office at Hostos, including but not limited to mold, rodent infestation, dust and otherwise unsanitary conditions."  (*Id.* ¶ 74.)  Plaintiff requested to work from home in May 2017, but her requests were denied.  (*Id.* ¶ 104.)  Plaintiff alleges, however, that CUNY "allowed the male Athletic Director from [Kingsborough Community College] the reasonable accommodation of working from home as a result of his problems breathing in his office space."  (*Id.* ¶ 105.)  Plaintiff further alleges that because of the onset of her disability in 2017, Hostos has stripped her of decision-making powers within her department and excluded her from department meetings.  (*Id.* ¶ 102.)  Plaintiff's First Amended Complaint reveals, however, that Hostos did not know about her disability until "June 28, 2017," and does

not even describe how Hostos learned of her disability.  (*Id.* ¶ 101.)

Plaintiff's disability discrimination and failure to accommodate claims fail.  First, with respect to disability discrimination, Plaintiff has not adequately alleged facts suggesting that she suffered an adverse employment action because of her disability or perceived disability.  As outline in Section IV(B)(2), *supra*, Plaintiff's First Amended Complaint alleges that she suffered the same exact adverse employment actions well before 2017, and has experienced these adverse employment actions "throughout the entirety of [her] employment" with CUNY.  (*Id.* ¶ 70(a)-(r).)  Second, with respect to her failure to accommodate claim, Plaintiff has failed to adequately allege that she requested a reasonable accommodation and was denied an accommodation. Although Plaintiff states that she requested to work from home in May 2017, she does not describe the reasons why she made this request or the context of her request.  (*Id.* ¶ 104.) Moreover, Plaintiff's First Amended Complaint makes clear that Hostos did not even learn about her disability until a month later on June 28, 2017.  (*Id.* ¶ 101.)  Plaintiff thus fails to plead sufficient factual content plausibly alleging Hostos' "refusal to accommodate" her disability. *McBride*, 583 F.3d at 102.  Even if Plaintiff did provide such allegations, Plaintiff's First Amended Complaint is devoid of any facts giving rise to an inference of discriminatory intent with respect to Plaintiff's disability.  Accordingly, Plaintiff's ADA and related state and city claims are dismissed.

### E.   *Family Medical Leave Act*

Plaintiff's Sixth cause of action is against Hostos for interference with Plaintiff's rights under the FMLA, and for FMLA retaliation.  (FAC ¶¶ 121–131.)

### 1.  Pleadings Standards

In order to plead interference under the FMLA, Plaintiff must demonstrate: "1) that she is an eligible employee under the FMLA; 2) that the defendant is an employer as defined by the FMLA; 3) that she was entitled to take leave under the FMLA; 4) that she gave notice to the defendant of her intention to take leave; and 5) that she was denied benefits to which [s]he was entitled under the FMLA." *Graziadio v. Culinary Inst. of America*, 817 F.3d 415, 424 (2d Cir. 2016).  Interfering with the exercise of an employee's rights includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Potenza v. City of New York*, 365 F.3d 165, 167 (2d Cir. 2004) (per curiam) (citing 29 C.F.R. § 825.220(b)). Interference also includes "discharging or in any other way discriminating against any person (whether or not an employee) for opposing or complaining about any unlawful practice under the [FMLA]," 29 C.F.R. § 825.220(a)(2), and "induc[ing] employees to waive[ ] their prospective rights under FMLA." *Id*. § 825.220(d).  However, when an employee's claim is that she "was subjected to adverse employment actions . . . for exercising [her] FMLA rights," her cause of action is not one for FMLA interference, but for FMLA retaliation. *Greenberg v. State Univ. Hosp.-Downstate Med. Ctr.*, No. 15-CV-2343 (PKC) (VMS), 2019 WL 4752018, at *17 (E.D.N.Y. Sept. 29, 2019); *see also  Simmons v. Woodycrest Ctr. for Human Dev*., Inc., No. 10 Civ. 5193 (JSR), 2011 WL 855942, at *4 (S.D.N.Y. Mar. 9, 2011) (stating that a grievance based on an employee's termination is more properly analyzed as a cause of action for retaliation); *LeClair v. Berkshire Union Free Sch. Dist*., No. 1:08-CV-1354 (LEK/RFT), 2010 WL 4366897, at *6 (N.D.N.Y. Oct. 28, 2010) ("Plaintiff's theory of interference by termination is merely a retaliation theory in disguise"); *Di Giovanna v. Beth Israel Med. Ctr*., 651 F. Supp. 2d 193, 203 (S.D.N.Y. 2009) (holding plaintiff's interference claim "really is no more than an effort to dress

[his] retaliation claim in (barely) different clothing").

To properly allege a claim of FMLA retaliation, Plaintiff must sufficiently plead that "1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for [her] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Graziadio*, 817 F.3d at 429. Plaintiff can raise "an inference of retaliatory intent if she demonstrates that exercising her rights under the FMLA constituted a negative factor in the defendant's decision to terminate her employment." *Ejiogu v. Grand Manor Nursing & Rehab. Ctr.*, No. 15cv505 (DLC), 2017 WL 1184278, at *11 (S.D.N.Y. Mar. 29, 2017).

### 2. Application

Plaintiff alleges that she "was entitled to intermittent leave under the FMLA," (FAC ¶ 126), due to her exacerbated asthma condition, and took FMLA leave "from on or about June 28, 2017, through on or about November 16, 2017," (*Id.* ¶ 77). Plaintiff states that during this time she "was on medical leave for her disability," (*id.*), "which ha[d] persisted for more than six months," (FAC ¶ 100). Plaintiff argues that "despite [CUNY's] duty to compensate Plaintiff for her time accrued," CUNY denied Plaintiff her "compensatory time owed," (Doc. 34, at 22), in the form of "vacation time," which was taken away unjustifiably after returning from FMLA leave," (FAC ¶ 130). Plaintiff's argument fails, as "[a]n employer may require an employee to exhaust her paid leave prior to requesting FMLA leave," and the "employer may elect, or . . . require the employee, to substitute any [] accrued paid vacation leave, personal leave, family leave, or medical or sick leave of the employee for leave provided [in the FMLA]." *Hewett v. Triple Point Tech., Inc.*, 171 F. Supp. 3d 10, 15 n.2 (D. Conn. 2016) (citing 29 U.S.C. § 2612(d)(1)–(2)); 29 C.F.R. § 825.207 ("FMLA permits an eligible employee to choose to

substitute accrued paid leave for FMLA leave.").  Accordingly, Plaintiff's FMLA interference claim is dismissed.[12]

Plaintiff next alleges that "[s]ince on or about November 16, 2017, when Plaintiff returned from her FMLA leave, Defendant CUNY . . . subject[ed] her to negative employment actions in retaliation for exercising her rights to medical leave, including but not limited to: [e]xcluding her from department meetings; [s]tripping her of any decision-making powers within her department; [i]gnoring her request for reclassification from HEA to HEO; and [r]efusing to compensate her time worked by granting her paid leave."  (FAC ¶ 131.)  For the same reasons outlined in Sections IV(B)(2) and IV(D)(2), *supra*, Plaintiff's allegation that her FMLA leave caused these adverse employment actions is flatly refuted by Plaintiff's allegations that she suffered these same adverse employment actions well before November 16, 2017.  (*See id.* ¶ 76 (alleging as part of Title VII retaliation claim that "as a result of her [discrimination] complaints . . . made on or about October 24, 2017 Defendants have retaliated against Plaintiff," and listing the same adverse employment actions); *Id.* ¶¶ 74–75 (claiming that she suffered the same adverse employment actions as early as January 2017 when her asthma became exacerbated); *Id.* ¶ 70(a)-(r) (claiming that she suffered even broader adverse consequences "throughout the entirety of [her] employment" with CUNY).)  Plaintiff's FMLA retaliation claim is therefore dismissed.

---

[12] Even if Plaintiff were to argue, pursuant to 29 C.F.R. § 825.300(d)(1), that "the employer must inform the employee of [any accrued paid leave] designation at the time of designating the FMLA leave," *Smith v. Westchester Cty.*, 769 F. Supp. 2d 448, 467 (S.D.N.Y. 2011), Plaintiff's First Amended Complaint does not contain sufficient factual allegations to support such an argument.  Plaintiff alleges that she was told by Human Resources to address her time designation with her supervisors, but does not allege whether she indeed addressed the issue with her supervisors or what any such discussions revealed.  (FAC ¶¶ 128–30.)  Plaintiff's allegations are instead confusing, contradictory, and too general to support any inference that CUNY interfered with her FMLA rights.

### F. *Exhaustion*

Although Defendants argue that many of Plaintiff's claims are barred due to her failure to exhaust her administrative remedies, "[f]ailure to exhaust is better viewed as an affirmative defense," not a pleading requirement. *Jones v. Bock,* 549 U.S. 199, 200 (2007); *Grullon v. City of New Haven,* 720 F.3d 133, 141 (2d Cir. 2013). "Because Defendants bear the burden of showing non-exhaustion, the issue of exhaustion is generally not amenable to resolution by way of a motion to dismiss. Rather, the defendants must present proof of non-exhaustion." *Novick,* 376 F. Supp. at 336 (internal quotations omitted). Because I do not find that Plaintiff's "failure to exhaust [her administrative remedies] is clear from the face of the complaint," *Gomez v. N.Y.C. Police Dep't*, 191 F. Supp. 3d 293, 299 (S.D.N.Y. 2016) (internal quotations omitted), I reject Defendants argument at this stage without prejudice.

### V.   <u>Conclusion</u>

For the foregoing reasons, Defendants' motion to dismiss, (Doc. 29), is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Third, Fourth, Fifth, and Sixth causes of action are DISMISSED, but Plaintiff's First, Second, Seventh, and Eighth causes of action alleging sex discrimination against Defendants CUNY, Hostos, and Cruz may proceed. Defendants CUNY, Hostos, and Cruz are directed to answer Plaintiff's Amended Complaint within thirty (30) days of the entry of this Opinion & Order.

The Clerk of Court is respectfully directed to terminate the open motion at Document 29.

The Clerk is further directed to terminate Defendants David Gomez, Joshua Rivera, Eugene

Sohn, Johanna Gomez, and Does 1–10.

SO ORDERED.

Dated: April 21, 2020
        New York, New York

Vernon S. Broderick
United States District Judge