UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
:
KRISHNA DASS,                                              :
:
                    Plaintiff,                     :
:           18-CV-11325 (VSB)
         -against-                              :
:           **OPINION & ORDER**
CITY UNIVERSITY OF NEW YORK, *et          :
al.*,                                                    :
:
                  Defendants.                    :
:
------------------------------------------------------------X

Appearances:

Todd Jay Krouner
Christopher W. Dennis
Law Office of Todd J. Krouner
Chappaqua, New York
*Counsel for Plaintiff*

Alison Sue Mitchell
Karen Rhau
New York City Law Department
New York, New York

Edwar Estrada
Kauff McGuire & Margolis LLP
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Before me are Plaintiff Krisha Dass's objections to Magistrate Judge Ona T. Wang's order denying her leave to amend her First Amended Complaint (the "FAC") and denying her request to depose Ester Rodriguez-Chardavoyne ("Rodriguez-Chardavoyne"), Marquee Poole ("Poole"), and either Ann Paguay ("Paguay") or Diania Kreymer ("Kreymer"). For the reasons set forth below, Dass's objections are SUSTAINED in part and OVERRULED in part.

I assume familiarity with the facts chronicled in my earlier orders, (*see, e.g.*, Docs. 40, 181), and will refer only to the facts necessary to explain my decision.

## I. Legal Standard

When a party objects to a magistrate judge's non-dispositive order, the district court must review the objections and "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). An order is "clearly erroneous" when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Gualandi v. Adams*, 385 F.3d 236, 240 (2d Cir. 2004) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A decision is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Weiss v. La Suisse*, 161 F. Supp. 2d 305, 321 (S.D.N.Y. 2001) (internal quotation marks omitted). A party may serve and file any objections to a magistrate judge's ruling on a non-dispositive matter within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(a).

## II. Discussion

Dass raises two objections to Judge Wang's rulings. First, Dass argues that Judge Wang incorrectly concluded that Rule 16(b), rather than Rule 15(a), governs her motion to amend the FAC. (Doc. 173-1 at 9–18.) Second, Dass argues that Judge Wang erroneously denied her request to depose three additional witnesses, without having considered her paramount interests in taking the depositions. (Doc. 173-1 at 18–25.) After addressing the issue of timeliness, I discuss each of these objections in turn.

### A. *Timeliness*

Before turning to the merits of Dass's objections, I consider whether they were timely filed. Under Rule 72(a), parties have fourteen days to file written objections to a magistrate

judge's non-dispositive ruling, Fed. R. Civ. P. 72(a), and failure to do so timely waives further judicial review, *see Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) ("We have adopted the rule that failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."). Judge Wang issued an oral ruling denying Dass leave to amend and to depose additional witnesses on September 13, 2022. (*See* Doc. 168 at 4:6–7 ("I find here the plaintiff has not demonstrated good cause to modify the scheduling order in this case."); *id.* at 4:22–24 ("I am denying the motion for leave to depose Ann Paguay . . . or Diania Kreymer."); *id.* at 5:11–12 ("Same with witness Poole, . . . same reasons to deny leave to [de]pose Poole."); *id.* at 44:4–7 ("Based on the record before me, I find that deposition of Ms. Rodriguez-Chardavoyne would be unreasonably cumulative to what has already been done.").) Yet Dass did not file her objections until September 29, 2022—sixteen days later. (Doc. 173.) Judge Wang's oral ruling was memorialized in writing on September 15, 2022. (Doc. 167.) An oral ruling, however, "has the same effect as a written order," *Dubai Islamic Bank v. Citibank, N.A.*, No. 99-CV-1930, 2002 WL 1628802, at *1 (S.D.N.Y. July 23, 2002), and is sufficient to "trigger" the "period to file objections," *Scharff v. Claridge Gardens, Inc.*, No. 88-CV-2047, 1990 WL 186879, at *7 (S.D.N.Y. Nov. 21, 1990). *See also Yi Xiang v. Inovalon Holdings, Inc.*, No. 16-CV-4923, 2018 WL 6582802, at *1 (S.D.N.Y. Oct. 30, 2018) (holding that a Magistrate Judge's ruling "triggered the fourteen-day deadline to object prescribed by Rule 72 (a) of the Federal Rules of Civil Procedure, even though his decision was rendered orally and was not formally noted on the docket"); *Samad Bros. v. Bokara Rug Co.*, No. 09-CV-5843, 2011 WL 4357188, at *3–4 (S.D.N.Y. Sept. 19, 2011) (finding that the 14-day window to object began running on the date of the Magistrate Judge's oral ruling instead of the date of the Magistrate Judge's subsequent written clarification); *Wigglesworth v. Maiden*

3

*Holdings, Ltd.*, No. 19-CV-05296, 2023 WL 1794788, at *2 (D.N.J. Feb. 7, 2023) ("an oral decision made on the record, by itself, is sufficient to preserve the record, facilitate review, and trigger the fourteen-day window for filing objections" (collecting cases)).  Accordingly, Dass has waived her right to object to Judge Wang's decisions.

However, the waiver rule is non-jurisdictional, and I "may excuse the default in the interests of justice." *Thomas v. Arn*, 474 U.S. 140, 155 (1985).  "Such discretion is exercised based on, among other factors, whether the defaulted argument has substantial merit or, put otherwise, whether the magistrate judge committed plain error in ruling against the defaulting party." *Spence v. Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 174 (2d Cir. 2000).  Because Dass's objection to Judge Wang's decision denying her leave to amend has "substantial merit," I conclude that it is in the interest of justice to excuse her default.  By contrast, Dass's objection to Judge Wang's decision denying her request to take additional depositions are meritless and her arguments are therefore waived.  I have nonetheless considered Dass's objections on the merits and, for the reasons set forth in Section II.C., adopt that aspect of Judge Wang's ruling.

    **B.**    *Leave to Amend*[1]

        **1. Applicable Law**

Determining whether a motion to amend is governed by Rule 15(a) or Rule 16(b) turns on the timeliness of the motion under the court's case management plan.  Where a motion to amend is timely filed, Rule 15's liberal standard governs. *See Soroof Trading Dev. Co. v. GE Microgen, Inc.*, 283 F.R.D. 142, 147 (S.D.N.Y. 2012).  Untimely motions, however, are also

---

[1] Although the parties dispute what standard of review applies to Judge Wang's order denying Dass leave to amend, (*compare* Doc. 173-1 at 10 (arguing that Judge Wang's ruling is subject to de novo review), *with* Doc. 180 at 3 (arguing that Judge Wang's ruling should be reviewed for clear error)), I need not resolve that dispute because I sustain Dass's objection even under the more deferential clear-error standard.

subject to Rule 16's more stringent standard, under which a plaintiff must show "good cause." *Id.*

Rule 15 provides that courts "should freely give leave" to amend a pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, "it is within the sound discretion of the district court to grant or deny leave to amend." *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009) (internal quotation marks omitted). The Supreme Court has instructed lower courts to grant Rule 15 motions in the absence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) ("A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."). The party opposing the amendment has the burden of establishing prejudice, bad faith, and futility of the amendment. *See Grant v. Citibank (S.D.), N.A.*, No. 10-CV-2955, 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010) (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 250 (2d Cir. 1993)).

Rule 16(b) requires a district court to set a case management plan that "limit[s] the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). Once such a case management plan is issued, it "may be modified only for good cause." Fed. R. Civ. P. 16(b)(4). Therefore, notwithstanding the more lenient standard of Rule 15(a), "a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000). A party cannot establish good cause where "the proposed amendment rests on information that the party knew,

or should have known, in advance of the deadline." *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2012) (internal quotation marks omitted).

### 2. Application

As an initial matter, I must decide whether Rule 15 or 16 applies to this case. On June 15, 2020, I issued a Case Management Plan and Scheduling Order, which provides:

> 4. Except as provided by Rule 15 of the Federal Rules of Civil Procedure, no additional parties may be joined without leave of the Court.
>
> 5. Except as provided by Rule 15 of the Federal Rules of Civil Procedure, no additional causes of action or defenses may be asserted after without leave of the Court.

(Doc. 45 ¶¶ 4–5.)

This language explicitly contemplates that further amendments to the complaint would be governed by Rule 15. I therefore conclude that Rule 15(a)(2) is the appropriate standard to evaluate Dass's application to amend the FAC and do not consider whether she has demonstrated "good cause" under Rule 16(b)(4). As explained above, that Rule applies only when "a motion to amend [is] filed after the deadline a district court has set for amending the pleadings." *Parker*, 204 F.3d at 340. No such deadline was set in the Case Management Plan and Scheduling Order To apply Rule 15 here, I consider a number of factors, including "futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy*, 482 F.3d at 200.

#### a. Futility

"A proposal to amend a complaint is futile if the proposed amended complaint would fail to state a claim on which relief could be granted." *Perfect Pearl Co.*, 889 F. Supp. 2d at 459. The futility of an amendment is thus assessed under the standard for a Rule 12(b)(6) motion to dismiss. *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d

Cir. 2002) ("An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)."). Under that standard, the proposed amended complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Defendants bear the burden of establishing futility.

### i. *Title VII Retaliation*

Defendants argue that adding the Third Cause of Action, retaliation under Title VII, is futile because Dass fails to plausibly allege a protected activity and an adverse employment action. (Doc. 180 at 11–12.) I agree that Plaintiff fails to plausibly allege a protected activity, which dooms her Title VII retaliation claim.

Defendants contend that the "security reports [Dass] filed against Mr. Sohn and former President Gomez [do not qualify] because they were not complaints about discrimination." (Doc. 180 at 11.) A complaint to a supervisor is protected activity—even if it is "meritless"—when it is "sufficiently pointed to be reasonably understood as a complaint about discrimination . . . not just general unsatisfactory or unfair conduct." *Moore v. Hadestown Broadway Ltd. Liab. Co.*, 722 F. Supp. 3d 229, 246 (S.D.N.Y. 2024) (internal quotation marks omitted). No magic words such as "discrimination" or "gender" are required for reporting misconduct, *see, e.g.*, *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521–22 (S.D.N.Y. 2010), but the complaint must put the "employer on notice that the employee believes [her]self to be complaining of discriminatory conduct," *id*. at 522–23.

The security reports at issue here did not provide such notice. For example, Dass complained that Sohn spoke to her in an "inappropriate, condescending and aggressive tone."

(Doc. 173-35 at 5.)[2] She similarly described her interaction with President Gomez as a "hostile environment" from which she wanted to "exit." (*Id.* at 6.) These allegations may be sufficient to put Defendants on notice that she is complaining of unfair and inappropriate conduct, but it falls short of providing notice that Dass believed herself to be complaining about sex-based discrimination. Although Dass's use of the term "hostile environment" could provide notice concerning sex-based discrimination if accompanied by additional details, the two-page statement containing detailed factual allegations fails to allege a basis in sex or gender discrimination. *See, e.g.*, *Lucio v. N.Y.C. Dep't of Educ.*, 575 F. App'x 3, 6 (2d Cir. 2014) (summary order) (finding no protected activity where plaintiff complained of her supervisor's mistreatment but failed to allege that such treatment was discriminatory); *Bamba v. Fenton*, 758 F. App'x 8, 12–13 (2d Cir. 2018) (summary order) (finding no protected activity where plaintiff's internal complaint contained conclusory allegation that plaintiff was "discriminated and defamed" and employer would not reasonably understand that such a complaint was directed at racial discrimination prohibited by Title VII). Therefore, I find that Defendants have carried their burden of establishing that Plaintiff's Title VII retaliation claim is futile. Dass's objections to Judge Wang's order denying her motion to file a Second Amended Complaint are OVERRULED as to the Third Cause of Action.

        **ii.**    *Discrimination Under the Equal Pay Act*

Defendants also contend that adding the Fourth Cause of Action, discrimination under the Equal Pay Act ("EPA"), would be futile because Dass has "failed to plead her position was substantially equal to [that of] her comparators." (Doc. 180 at 12.) I disagree. The Proposed Second Amended Complaint catalogues several similarities between Dass's position and that of

---

[2] Because the security reports lack page numbers, my reference to page numbers refers to the ECF page number on the document.

male athletic directors.  For example, Dass alleges that she and her comparators were both responsible for (i) "direct[ing] and coordinat[ing] the development and administration of all athletic programs, including intercollegiate, intramural, and recreational, which were comparable in quantity and type," (ii) "coordinat[ing], prepar[ing], implement[ing] and manag[ing] their respective athletic department budgets, the amounts of which were comparable," and (iii) "oversee[ing] and maintain[ing] athletic facilities of approximately the same size and type." (Doc. 128, Ex. A ("Proposed SAC") ¶ 27.)  These allegations suffice to plausibly allege that Dass's male colleagues performed equal work in jobs requiring equal skill, effort, and responsibility.  *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 256 (2d Cir. 2014) (holding that a plaintiff must plead "'sufficient factual matter, accepted as true,' to permit 'the reasonable inference' that the relevant employees' job *content* was 'substantially equal'" (quoting *Iqbal*, 556 U.S. at 678) (emphasis in original)).  Considering these allegations, I conclude that Defendants have failed to demonstrate that the proposed allegations fall short of the pleading standard in *Iqbal*.

       **iii.** *Discrimination Under Section 1983, NYSHRL, and NYCHRL*

Defendants argue that adding the Second, Fifth and Sixth Causes of Action, discrimination on the basis of sex under 42 U.S.C. § 1983, NYSHRL, and NYCHRL, respectively, would be futile because Dass's "allegations [as to President Gomez and Mr. Sohn] are not concrete or pled with particularity." (Doc. 180 at 13.)  The Proposed Second Amended Complaint, however, has added the allegation that Sohn, either at the direction or with the knowledge of President Gomez, initiated a "sham investigation" against Dass by the Joint Commission on Public Ethics and/or New York State Inspector General.  (Proposed SAC ¶ 59.) This provides the specificity that was missing from the First Amended Complaint.  Accepting all

9

the factual allegations in the Proposed Second Amended Complaint as true, as I must to assess the viability of its claims, Dass now plausibly alleges that (1) Sohn and Gomez took adverse action against her by initiating a sham investigation, (*id.* ¶ 59); and (2) Dass's sex was a motivating factor in the decision, (*id.* ¶¶ 50–51, 53, 62, 87–89). *See Adams-Flores v. City of New York*, No. 18-CV-12150, 2020 WL 996421, at *5 (S.D.N.Y. Mar. 2, 2020) ("To state a claim under both Section 1983 and NYSHRL, 'a plaintiff must plausibly allege that (1) the employer took adverse action against her and (2) her protected characteristic was a motivating factor in the employment decision." (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86, 91 (2d Cir. 2015) (alterations adopted))). Based on the proposed amendment, I conclude that the allegations against Sohn and President Gomez are pleaded with sufficient specificity.

### b. Bad Faith

The burden of establishing bad faith falls on Defendants. *See Travelex Currency Servs., Inc. v. Puente Enters., Inc.*, 449 F. Supp. 3d 385, 395 (S.D.N.Y. 2020). Although there is scant guidance in this Circuit with respect to what constitutes bad faith for purposes of denying leave to amend, where an amendment is made merely to "gain a tactical advantage," bad faith may preclude future amendments. *Oneida Indian Nation of N.Y. State v. County of Oneida*, 199 F.R.D. 61, 80 (N.D.N.Y. 2000). Here, Defendants argue that Dass knew (or should have known) much of the information she characterizes as new. (Doc. 180 at 7.) However, they do not offer a bad-faith rationale for not pleading this information sooner. Nor can I identify one myself. *See, e.g.*, *Blagman v. Apple, Inc.*, No. 12-CV-5453, 2014 WL 2106489, at *3 (S.D.N.Y. May 19, 2014) ("To the extent that the defendants claim that [the plaintiff's] delay was strategic, they provide no showing of bad faith apart from the delay itself." (citation omitted)); *Randolph*

*Found. v. Duncan*, No. 00-CV-1172, 2002 WL 32862, at *3 (S.D.N.Y. Jan. 11, 2002) ("[T]he fact that a party may have had evidence to support a proposed amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith."). I therefore conclude that Defendants have not carried their burden to demonstrate that Dass's proposed amendments were made in bad faith.

### c. Undue Prejudice

Prejudice to the non-moving party resulting from a proposed amendment is perhaps the "most important" reason to deny leave to amend. *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). Prejudice is generally found where, at a critical juncture of a case, a proposed amendment "adds new parties or at least entails more than an alternate claim or a change in the allegations of a complaint." *State Farm Mut. Auto. Ins. v. CPT Med. Servs., P.C.*, 246 F.R.D. 143, 149 (E.D.N.Y. 2007) (internal quotation marks omitted).

Here, Defendants contend that the proposed amendments are unduly prejudicial because they would require the expenditure of additional resources and burden them with additional discovery, further delaying the disposition of the case. (Doc. 180 at 8–9.) However, "the prospect of spending more time, effort, or money on litigation—including through additional discovery and motion practice—does not render an amended complaint unduly prejudicial." *Francisco v. Abengoa, S.A.*, 559 F. Supp. 3d 286, 314 (S.D.N.Y. 2021). Moreover, Defendants do not state with any specificity what additional discovery they would need. Nor do they explain, in other than a conclusory way, what the burden on them would be. On the other hand, Dass submits that she would not need any additional discovery, and that Defendants are in control of whatever additional information they may need to defend themselves. (Doc. 182 at 6–7.) Even though amending the FAC at this point in the lifecycle of the case is later than

11

preferable, a briefing schedule for summary judgment has not yet been set, and the interrelation of the existing claims and the new ones will not materially prolong the proceedings. Accordingly, I find that Defendants have not demonstrated that they will be unduly prejudiced by the proposed amendments.

### d. Undue Delay

Delay alone is not grounds for denying amendment. *See Brecher v. Citigroup Inc.*, No. 09-CV-7359, 2011 WL 5525353, at *2 (S.D.N.Y. Nov. 14, 2011). However, where a significant period of time elapses prior to the filing of a motion to amend, the moving party must explain the reason for the extended delay. *See Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011). In arguing undue delay, Defendants point principally to the fact that Dass was aware of the purportedly newly discovered information when she filed the FAC, two years and eleven months ago. (Doc. 180 at 10; Doc. 24 (FAC filed 4/15/2019), Doc. 118 (Leave to file SAC filed 4/1/2022).) However, mere allegations that Dass "could have moved to amend earlier than she did . . . is insufficient to demonstrate undue delay." *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016); *see Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 460 (S.D.N.Y. 2012) (rejecting argument that motion to amend should be denied because the plaintiffs were seeking to allege facts "that were previously within their knowledge" (footnote omitted)). The length of the delay in this case does not change this result. *See Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 384 (2d Cir. 1968) ("The three-year delay from the filing of the initial complaint is an inadequate basis for denying a motion to amend."). Having considered the length of the delay and the reasons for it, I conclude that this factor weighs in favor of granting Dass's motion to amend.

Accordingly, Dass's objections to Judge Wang's order denying her motion to file a Second Amended Complaint are OVERRULED as to the Third Cause of Action, and SUSTAINED as to the Second, Fourth, Fifth, and Sixth Causes of Action, and Dass's motion for leave to amend is GRANTED in part and DENIED in part.

### C. *Leave to Depose Witnesses*

Dass also objects to Judge Wang's order denying her request to exceed the presumptive limit of ten depositions per side under Rule 30(a)(2)(A)(i) and depose Rodriguez-Chardavoyne, Poole, and either Paguay or Kreymer. (Doc. 173-1 at 18–25.) Because "[d]iscovery disputes are quintessential examples of such non-dispositive pretrial issues," *see Progress Bulk Carriers v. Am. S.S. Owners Mut. Prot. & Indem. Ass'n*, 2 F. Supp. 3d 499, 502 (S.D.N.Y. 2014), Judge Wang's denial of Dass's request may be modified or set aside only if it is "clearly erroneous or . . . contrary to law," Fed. R. Civ. P. 72(a). To reject a finding of fact as clearly erroneous, a court must be "left with the definite and firm conviction that a mistake has been committed." *U.S. Gypsum Co.*, 333 U.S. at 395. Magistrate judges thus have "broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is abused." *Derthick v. Bassett-Walker Inc.*, No. 90-CV-3845, 1992 WL 249951, at *8 (S.D.N.Y. Sept. 23, 1992).

I have reviewed Dass's objections to Judge Wang's order and find no error, let alone clear error, in Judge Wang's decision. Although Dass evidently disagrees with Judge Wang's discovery ruling, she fails to identify a meaningful argument as to why Judge Wang's conclusion that the depositions were unwarranted under Rule 30 was clear error. Accordingly, Dass's objections to Judge Wang's order denying her request to depose Rodriguez-Chardavoyne, Poole, and either Paguay or Kreymer are OVERRULED.

### III. Conclusion

For these reasons, Dass's objections are SUSTAINED in part and OVERRULED in part. Dass is directed to file her Second Amended Complaint by December 19, 2024. Defendants shall respond to the Second Amended Complaint within 21 days of the filing.

SO ORDERED.

Dated: December 5, 2024
      New York, New York

_____
Vernon S. Broderick
United States District Judge