UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X          **1:18-cv-11325 (VSB) (OTW)**

KRISHNA DASS,

                                        Plaintiff,                                         **SECOND AMENDED**
                                                                                                    **COMPLAINT**

-against-                                                                                 **PLAINTIFF DEMANDS**
                                                                                                    **TRIAL BY JURY**

THE CITY UNIVERSITY OF NEW YORK, as operators
of EUGENIO MARÍA DE HOSTOS COMMUNITY
COLLEGE; DAVID GOMEZ, as President of EUGENIO
MARÍA DE HOSTOS COMMUNITY COLLEGE;
JOSHUA RIVERA, as Director of Government and
External Relations for EUGENIO MARÍA DE HOSTOS
COMMUNITY COLLEGE; NATHANIEL CRUZ, as
Vice President of Student Development and Enrollment
Management for EUGENIO MARÍA DE HOSTOS
COMMUNITY COLLEGE; EUGENE SOHN, as
Executive Counsel and Labor Designee for EUGENIO
MARÍA DE HOSTOS COMMUNITY COLLEGE;
JOHANNA GOMEZ, as Assistant Dean of Student Life
for EUGENIO MARÍA DE HOSTOS COMMUNITY
COLLEGE; and DOES 1-10,

                                        Defendants.
------------------------------------------------------------------------X

          Plaintiff KRISHNA DASS, by her attorneys, LAW OFFICE OF TODD J. KROUNER

P.C., respectfully alleges:

          1.          Plaintiff, Krishna Dass ("Plaintiff"), is a 50-year-old woman who was employed

as a Higher Education Associate ("HEA"), and functioning as an Athletic Director, by Defendant

The City University of New York ("CUNY"), as operators of Eugenio María de Hostos

Community College ("HOSTOS"), from on or about April 17, 2013 until January 15, 2019,

when she was constructively terminated.

          2.          Defendant CUNY is a public university, comprising 25 educational institutions,

including HOSTOS, duly organized and existing under the laws of the State of New York, with its principal place of business in New York, New York.

3.      At all relevant times hereto, Defendant DAVID GOMEZ ("DAVID GOMEZ") was employed as the President of HOSTOS.

4.      At all relevant times hereto, Defendant NATHANIEL CRUZ ("CRUZ") was employed by CUNY as the Vice President for Student Development and Enrollment Affairs at HOSTOS.

5.      At all relevant times hereto, Defendant EUGENE SOHN ("SOHN") was employed by CUNY as the Executive Counsel and Labor Designee at HOSTOS.

6.      At all relevant times hereto Johanna Gomez ("Dean Gomez") was employed by CUNY as the Assistant Dean of Student Life at HOSTOS.

7.      Plaintiff was unlawfully discriminated against by Defendants CUNY and HOSTOS and by its administrators, including Defendants DAVID GOMEZ, CRUZ, and SOHN on the basis of her sex and gender. In so doing, Defendants discriminated against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. as amended ("Title VII"); The Civil Rights Act of 1866, 42 U.S.C. § 1983, et seq. as amended ("Section 1983"); the Equal Pay Act of 1963, 29  U.S.C. § 206(d), et seq. as amended ("EPA"); New York Executive Law § 290, et seq. ("NYSHRL"); and New York City Administrative Code § 8-107 ("NYCHRL").

8.      This action seeks compensatory damages, back-pay, front-pay, punitive damages, liquidated damages, reasonable costs, attorney's fees and experts' fees for the discrimination suffered by Plaintiff as a result of Defendants' actions.

## THE PARTIES AND JURISDICTION

9.      Plaintiff resides at 5913 Country Club Drive, Myrtle Beach, South Carolina 29579.

10.      At all times relevant to this action, the campus of HOSTOS has been comprised multiple buildings in the New York City Borough of the Bronx, with its principal administrative offices located at 500 Grand Concourse, Bronx, New York 10451.

11.      12. Upon information and belief, at all times relevant to this action, Defendant CUNY employed approximately 43,000 employees.

12.      Pursuant to 42 U.S.C. § 2000e-5, and prior to the commencement of this action, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC").

13.      On or about September 11, 2018, Plaintiff received a Right to Sue letter from the EEOC.

14.      Pursuant to the NYCHRL, within ten days after commencement of this action, Plaintiff served a copy of her complaint upon the New York City Commission on Human Rights and Corporation Counsel for New York City.

15.      Defendants have discriminated against Plaintiff based on her sex and gender during her employment as the Athletic Director for HOSTOS, in the Bronx, New York, in violation of federal, state and New York City law. Defendants retaliated against Plaintiff when she complained of this discrimination.

## FACTS

16.      Plaintiff was recruited by CUNY and/or HOSTOS in 2013 to be HOSTOS' Athletic Director.  Although Plaintiff was hired to be the Athletic Director, she was given the

3

contractual title of athletic manager and placed on CUNY's lower-paying HEA pay scale.

17.     By contrast, CUNY's other Athletic Directors were given the contractual title of athletic director and placed on CUNY's higher-paying Higher Education Officer ("HEO") pay scale.

18.     Defendants, as well as the CUNY athletic community at large, knew and referred to Plaintiff as the Athletic Director for HOSTOS throughout her tenure.

19.     Plaintiff served as the Athletic Director at HOSTOS from on or about April 17, 2013 until January 15, 2019.

20.     At all times relevant hereto, Plaintiff served as the only Athletic Director at HOSTOS.

21.     After seven years of losses in interscholastic athletics, Plaintiff secured athletic victories for HOSTOS's interscholastic teams in her first year of employment.

22.     As Plaintiff's employer, Defendants CUNY and HOSTOS, by and through their employees, including without limitation CRUZ, DAVID GOMEZ, and SOHN, directed and set Plaintiff's pay, vacation time, sick days and employment schedules; provided all training; provided all rules and regulations pertaining to her employment; held full authority for discipline and promotion; and directed all policies and procedures with regard to her employment.

23.     At all times relevant hereto, CUNY's two-year community colleges, including HOSTOS, were subject to the centralized supervision and control of CUNY.  CUNY's centralized control included, without limitation:

> a.     CUNY created policies and procedures with which CUNY's individual
>         schools had to comply, such as CUNY's anti-discrimination and sexual
>         harassment policies;

4

b.  CUNY exercised control over the budgets of CUNY's individual schools by determining the respective portions of public funding allocated to CUNY's individual schools;

c.  CUNY required its individual schools to assign non-academic positions to specified pay scales, such as the HEA and HEO pay scales; and

d.  CUNY created job description templates which specified the requisite pay scale that CUNY's individual schools were to use.

24.    At all times relevant hereto, the personnel functions at CUNY's individual schools were subject to the centralized control by CUNY.  CUNY's control over individual CUNY schools included, without limitation, review for approval of staff hiring, compensation, pay scale classifications, promotions, and terminations.  CUNY had its own central human resources department, through which CUNY reviewed and either approved or denied the personnel functions at the individual CUNY schools.  Consequently, while CUNY's job description template for athletic directors specified placement on the HEO pay scale, CUNY specifically approved HOSTOS to place Plaintiff on the lesser-paying HEA pay scale.

25.    In April 2013, Plaintiff contracted to work 35 hours per week for HOSTOS. HOSTOS, with the prior approval of CUNY, gave Plaintiff a starting salary of $71,073.

26.    During the term of Plaintiff's employment as the Athletic Director at HOSTOS, the Athletic Directors at CUNY's other two-year community colleges were all men.  Brian Goldstein ("Mr. Goldstein") was the Athletic Director at CUNY's LaGuardia Community College ("LCC").  Damani Thomas ("Mr. Thomas") was the Athletic Director at CUNY's Kingsborough Community College ("KCC").  Jon Hochberg ("Mr. Hochberg") was the Athletic Director at CUNY's Queensborough Community College ("QCC").  Stephen Kelly ("Mr.

Kelly") was the Athletic Director at CUNY's Borough of Manhattan Community College

("BMCC").  Ryan McCarthy ("Mr. McCarthy") was the Athletic Director at CUNY's Bronx

Community College ("BCC").

27.     At all times relevant hereto, Plaintiff and Messrs. Goldstein, Thomas, Hochberg,

Kelly and McCarthy were similarly situated and performed substantially the same work, which

required equal skill, effort, duties and responsibilities.  Upon information and belief, without

limitation, Plaintiff and Messrs. Goldstein, Thomas, Hochberg, Kelly, and McCarthy each:

    a.  met the same minimum qualifications required for CUNY athletic directors – a bachelor's degree and eight years' related experience, or a Master's degree and six years' related experience;

    b.  were employed by and paid by CUNY;

    c.  worked at CUNY's two-year community colleges located in New York City;

    d.  were the most senior-ranking staff within their respective athletic departments;

    e.  had administrative responsibility for the planning, development and coordination of all activities within their respective athletic departments;

    f.  were responsible to direct and coordinate the development and administration of all athletic programs, including intercollegiate, intramural, and recreational, which were comparable in quantity and type;

    g.  oversaw intercollegiate athletic teams, the number of which at their respective schools fluctuated from year to year but were comparable in quantity and type;

    h.  oversaw athletic teams that competed against each other in the same

intercollegiate athletic conferences, including the CUNY Athletic Conference ("CUNYAC") and National Junior College Athletic Association ("NJCAA");

i.  were responsible to oversee and maintain athletic facilities of approximately the same size and type, including without limitation, pools, weight rooms, aerobic rooms, basketball courts, and general purpose gymnasiums;

j.  coordinated, prepared, implemented and managed their respective athletic department budgets, the amounts of which were comparable;

k.  were responsible for marketing and fundraising for their respective athletics programs;

l.  oversaw the selection, training, supervision and evaluation of full and part-time athletic department staff, coaches, and student workers, ;

m.  had similar types and amounts of athletic department staff, which fluctuated year to year;

n.  were responsible for ensuring their respective department's compliance with federal and divisional rules and regulations, including without limitation those imposed by CUNYAC and the NJCAA;

o.  were responsible for the recruitment, retention and academic success of student athletes;

p.  were responsible to draft, implement, and revise the policies and procedures applicable to their respective athletic departments, staff, and student athletes;

q.  coordinated the outside rentals of athletic facilities;

r.  had similar reporting structures, which included reporting directly to their respective deans and/or vice presidents, and to the executive director of CUNYAC;

s.  represented their respective athletic departments at regular meetings of CUNY's athletic directors;

t.  administrated games of intercollegiate athletic teams;

u.  collaborated with the different departments of their respective colleges on use of athletic facilities, fundraising, marketing, promotion and public relations;

v.  collected and analyzed data and statistics;

w.  prepared and distributed reports; and

x.  collaborated with communications professionals at their respective schools and media on publicity and reporting athletic events and results.

28.  At all times relevant hereto, Plaintiff and Messrs. Goldstein, Thomas, Hochberg, Kelly and McCarthy were each responsible to perform all of the duties and responsibilities set forth in CUNY's Athletic Director job description template.  Namely, they each:

a.  provided administrative direction and oversight for intercollegiate, intramural and recreational athletics staff, programs, facilities and activities;

b.  provided oversight for all athletics programs, facilities, and equipment;

c.  ensured compliance with federal, divisional and university athletics regulations;

d.  administered departmental funds and accounts in a fiscally responsible manner;

e.  collaborated with other College departments on recruiting and retaining

student athletes;

f.   collaborated with College communications professionals and the media on publicity and reporting of athletic events and results;

g.   managed full- and part-time athletics staff;

h.   planned, implemented, and promoted intercollegiate, intramural, and recreational athletic programs including varsity sports, intramural program, a range of credit and non-credit recreational programs;

i.   established and maintained appropriate policies and standards for teams and recreational groups;

j.   collected and analyzed departmental statistics and data and prepare and distributed reports as appropriate; and

k.   performed related duties as assigned.

29.    At all times relevant hereto, all of CUNY's Athletic Directors had to perform the forgoing duties and responsibilities.  In addition to the foregoing duties and responsibilities, Plaintiff was also required to:

a.   clean the campus pool;

b.   do laundry;

c.   set up facilities for all home games;

d.   personally supervise maintenance and upgrade projects, including but not limited to:

    i.   painting the gymnasium floor;

    ii.  cleaning the gymnasium floor;

    iii. cleaning closets; and

9

iv.  cleaning office spaces.

30.     At all times relevant hereto, Plaintiff documented her hours worked.

31.     At all times relevant hereto, Plaintiff had her documentation of time approved.

32.     At all times relevant hereto, Plaintiff planned and supervised the implementation of HOSTOS's campus recreational programming.

33.     At all relevant times hereto, Plaintiff planned and organized 15-20 intramural activities per year.

34.     At all relevant times hereto, HOSTOS typically had four intercollegiate athletic teams.  However, HOSTOS had as few as 2 and as many as 5 intercollegiate athletic teams.

35.     At all times relevant hereto, Plaintiff acquired and delivered gym equipment to HOSTOS for the upgrading of the weight room and aerobics room.

36.     At all times relevant hereto, Plaintiff secured rental agreements of HOSTOS facilities generating additional funds for HOSTOS.

37.     Upon information and belief, at all times relevant hereto, Plaintiff more than tripled HOSTOS's rental income generated during the course of her employment.

38.     At all times relevant hereto, Plaintiff redesigned and managed the HOSTOS Athletic Department website.

39.      In or about April 2015, Plaintiff requested to be reclassified from the HEA pay scale to the HEO pay scale, for which Plaintiff met the requirements.

40.     On or about April 13, 2015, Defendant CRUZ stated that he would support Plaintiff's request for reclassification from HEA to HEO.

41.     On or about April 13, 2015, Dean Gomez stated that she would support Plaintiff's request for reclassification from HEA to HEO.

42.     On or about April 13, 2015, Defendant SOHN stated that he would support Plaintiff's request for reclassification from HEA to HEO.

43.     During Plaintiff's tenure as Athletic Director at HOSTOS, Plaintiff was a member of the Professional Staff Congress (the "PSC"), which is a labor union for CUNY employees.

44.     In or about December 2016, Plaintiff sought the help of her PSC union representatives, including without limitation Mario Caruso ("Mr. Caruso"), Debra Bergen ("Ms. Bergen"), and Lizette Colon ("Ms. Colon") concerning there having been no action on Plaintiff's request for reclassification from HEA to HEO.

45.     On or about December 20, 2016, Mr. Caruso, Ms. Bergen, and Ms. Colon contacted SOHN concerning there having been no action on Plaintiff's request for reclassification from HEA to HEO.

46.     On or about January 24, 2017, SOHN responded to Mr. Caruso, Ms. Bergen, and Ms. Colon.  SOHN indicated that Plaintiff was on a list of staff that CRUZ would recommend for reclassification from HEA to HEO when CRUZ was asked for candidates.  The same day, Ms. Bergen replied to SOHN that his response was not acceptable and contrary to CUNY's Code of Practice and the HEO Guidelines.  Consequently, SOHN correctly anticipated that a formal grievance would soon be filed against HOSTOS on behalf of Plaintiff concerning her request for reclassification from HEA to HEO.

47.     On or about January 25, 2017, SOHN contacted Mark Ragovin, a grievance hearing officer at CUNY's central office ("Mr. Ragovin").  SOHN told Mr. Ragovin about SOHN's plot to deny Plaintiff's forthcoming grievance on the ground that HOSTOS was not required to advance her reclassification request to the HEO Screening Committee.  Mr. Ragovin encouraged SOHN's ploy by responding to SOHN, "Then let them eat cake!"

11

48.      Upon information and belief, Mr. Ragovin, or someone in his office, would have presided over any appeal of Plaintiff's grievance concerning her request for reclassification from HEA to HEO.  Consequently, SOHN preemptively undermined the impartiality of any potential appellate review of Plaintiff's grievance by Mr. Ragovin or his office.

49.      On or about February 14, 2017, Plaintiff filed a grievance with HOSTOS concerning her request for reclassification from HEA to HEO (Plaintiff's "Reclassification Grievance").  Where Plaintiff's Reclassification Grievance involved allegations against SOHN, he had a conflict of interest.  Nonetheless, SOHN simultaneously presided over the hearing of Plaintiff's Reclassification Grievance, served as the advocate for HOSTOS, and served as the sole decision-maker.

50.      On April 6, 2017, among other dates, SOHN subjected Plaintiff to discriminatory intimidation, ridicule, and insult where he publicly yelled, screamed, demeaned, belittled, and intimidated Plaintiff in front of her subordinates.

51.      Plaintiff was then called to a meeting with SOHN and DAVID GOMEZ where SOHN again publicly yelled, screamed, demeaned, belittled, and intimidated Plaintiff in front of DAVID GOMEZ and other HOSTOS staff.  DAVID GOMEZ joined in and publicly yelled, screamed, demeaned, belittled, and intimidated Plaintiff too.  As a member of the Professional Staff Congress who felt threatened and feared disciplinary action, Plaintiff had a right to have union representation present.  Plaintiff exercised that right and attempted to have her union chapter chair, Ms. Colon, present for the meeting with SOHN and DAVID GOMEZ.  However, SOHN and DAVID GOMEZ refused, despite Plaintiff's protest, and denied Plaintiff her right to have Ms. Colon present and made Ms. Colon wait outside.

52.      On April 7, 2017, Ms. Colon wrote an email to DAVID GOMEZ about what had

transpired with DAVID GOMEZ and SOHN the day before. Ms. Colon wrote that being

frustrated, overwhelmed, and enraged "cannot be used as [an] excuse for actions that humiliate

and trample the rights of any individual that work with us, creating an intimidating

environment."

53.    Ms. Colon forwarded the email thread to other members of the PSC union, Ms.

Bergen, Barbara Bowen ("Ms. Bowen"), and Debbie Bell ("Ms. Bell"). Ms. Colon elaborated on

the hostile work environment created by DAVID GOMEZ, and what he and SOHN did to

Plaintiff on April 6, 2017. Ms. Colon wrote to Ms. Bergen, Ms. Bowen, and Ms. Bell:

> Please note that this is a presidential attitude that is prevailing in
> which he feels that screaming is part of his leadership style and that
> we have to understand him. I understand that it is known in the
> College and at KCC when he was the Provost.
>
> Violence in the workplace? I would say yes!
>
> Another incident happened with the alumni relations director and she
> is willing to talk about it.
>
> The scary thing is that the other men in his cabinet are felling entitled
> to behave like him.

54.    As a result of the events on April 6, 2017, DAVID GOMEZ and SOHN caused a

letter of reprimand to be placed in Plaintiff's personnel file on April 11, 2017. This was a

violation of Plaintiff's contractual rights as a PSC union member, including without limitation,

her right to be presented with and acknowledge receipt of any letter of reprimand before it is

placed in her personnel file.

55.    On April 12, 2017, on the advice of Dean Gomez, Plaintiff filed a written

complaint with CUNY's Public Safety Officers at the HOSTOS campus against DAVID

GOMEZ and SOHN concerning the discriminatory hostile work environment that they had

13

created on April 6, 2017 (the "Hostile Work Environment Complaint"). Instead of taking action, CUNY's Public Safety Officers referred Plaintiff's hostile work environment complaint back to SOHN on or about April 17, 2017. Not surprisingly, SOHN took no action against himself or DAVID GOMEZ.

56.    On or about April 19, 2017, a grievance hearing was held concerning Plaintiff's Reclassification Grievance (the "Step-One Reclassification Grievance Hearing"). SOHN was disruptive and would not allow Mr. Caruso to complete his presentation or state the PSC union's case. Consequently, Plaintiff's Reclassification Grievance was not resolved.

57.    On or about April 19, 2017, Plaintiff also filed a separate grievance against HOSTOS concerning SOHN and DAVID GOMEZ having violated of her rights to union representation and to be presented with a letter of reprimand prior to it being placed in her personnel file (Plaintiff's "Reprimand Grievance"). Plaintiff sought a later hearing where her Reprimand Grievance would be heard and decided.

58.    CUNY and HOSTOS immediately retaliated against Plaintiff for the filing of Plaintiff's Hostile Work Environment Complaint and for the filing of Plaintiff's Reprimand Grievance.

59.    Upon information and belief, on or about May 5, 2017, SOHN contacted CUNY Interim General Counsel for Legal Affairs, Jane Sovern ("Ms. Sovern") concerning supposed impropriety on the part of Plaintiff. SOHN contacted Ms. Sovern at the direction of DAVID GOMEZ and/or with the prior knowledge and consent of DAVID GOMEZ. On or about the same day, SOHN and Ms. Sovern initiated a sham investigation of Plaintiff with the Joint Commission on Public Ethics ("JCOPE") and/or New York State Inspector General's Office (the "Inspector General's Office") concerning the rental of HOSTOS athletic facilities and HOSTOS'

intercity youth basketball camp, which Plaintiff's spouse helped to run.

60.     Upon information and belief, SOHN and Ms. Sovern falsely reported to the Inspector General's Office that Plaintiff did not have authority to execute rental agreements for the HOSTOS athletic facilities, and that Plaintiff's spouse was neither disclosed nor authorized to help HOSTOS run the basketball camp for intercity youth.  However, SOHN and Ms. Sovern declined to inform the Inspector General's Office that SOHN had expressly given Plaintiff general authorization to execute HOSTOS rental agreements.  Moreover, SOHN and Ms. Sovern declined to inform the Inspector General's Office that Plaintiff's supervisor, Dean Gomez, knew and about and authorized Plaintiff's spouse to help HOSTOS run the basketball camp.

61.     As a consequence of SOHN's and Ms. Sovern's false report to the Inspector General's Office, Plaintiff was damaged.  As a further consequence, upon information and belief, DAVID GOMEZ, SOHN, and/or CRUZ caused Plaintiff to be stripped of her authority to rent out HOSTOS athletic facilities, which severely impaired the operating budget available to Plaintiff to run the HOSTOS athletic department as she had before the investigation was initiated.

62.     Triggering an Inspector General's Office investigation into employees who complained about discrimination was part of HOSTOS' pattern and practice of retaliation.  Upon information and belief, SOHN was involved in triggering at least one other Inspector General's Office investigation of another female employee – after she had filed a discrimination and hostile work environment complaint – where he similarly alleged that another female employee had supposedly rented HOSTOS and/or CUNY facilities without authorization.

63.     CRUZ testified that the Inspector General's Office investigation into Plaintiff was self-initiated initiated by an Inspector General's Office audit.  CRUZ's false testimony is

contradicted by documentary proof that SOHN and Ms. Sovern in-fact initiated the Inspector General's Office's investigation into Plaintiff.

64.     On or about August 23, 2017, despite SOHN having a clear conflict of interest with respect to the allegations in Plaintiff's Reprimand Grievance, SOHN simultaneously presided over the hearing, served as the advocate for himself, DAVID GOMEZ, and HOSTOS, and served as the sole decision-maker.

65.     The discriminatory intimidation, ridicule, insult, and retaliation against Plaintiff continued.  On or about September 18, 2017, SOHN sabotaged Plaintiff's pending request for reclassification from the HEA pay scale to the HEO pay scale.  SOHN instructed HOSTOS' Director of Human Resources, Shirley Shevach ("Mrs. Shevach"), to submit Plaintiff's reclassification request to CUNY in a manner that was defective as to form and substance.  Mrs. Shevach did as SOHN had directed.  When CUNY Human Resources staff Susan Haggerty ("Mrs. Haggerty") advised Mrs. Shevach that Plaintiff's reclassification request was defective, Mrs. Shevach responded that SOHN had instructed her to submit the request "as is." Consequently, "based on the materials provided," Mrs. Haggerty rejected Plaintiff's reclassification.

66.     On or about October 2, 2017, SOHN authored a written decision concerning Plaintiff's Reprimand Grievance against DAVID GOMEZ and SOHN.  Rather than impartial consideration of Plaintiff's Reprimand Grievance, SOHN falsely stated that no letter of reprimand had been placed in Plaintiff's personnel file, and he denied Plaintiff's Reprimand Grievance as moot.

67.     On or about October 24, 2017, Plaintiff filed a step-two grievance to appeal SOHN's denial of her initial Reprimand Grievance (the "Step Two Reprimand Grievance").

68.     In response, HOSTOS and CUNY further retaliated against Plaintiff.  In or about December 2017, CRUZ usurped Plaintiff's authority over the athletic department where CRUZ:

    a.  excluded Plaintiff from meetings concerning the athletic department;

    b.  met with and gave direction directly to Plaintiff's subordinates, instead of through Plaintiff, circumventing her authority;

    c.  stripped Plaintiff of any decision-making powers within her department; and

    d.  reduced and relocated the staff who had reported to Plaintiff, which was fewer than any other CUNY Athletic Director and forced Plaintiff to perform the work typically performed by several people.

69.     On January 29, 2018, Plaintiff filed a charge of discrimination with the EEOC. HOSTOS and CUNY, through SOHN, further retaliated against Plaintiff yet again.

70.     On February 13, 2018, two weeks after Plaintiff filed her charge of discrimination, SOHN caused the letter of reprimand to again be placed into Plaintiff's personnel file – despite the fact that months earlier SOHN had dismissed Plaintiff's Reprimand Grievance in part on the grounds that no letter of reprimand had been placed in Plaintiff's personnel file.

71.     At all times relevant hereto, Plaintiff's job performance always has been at least satisfactory.

72.     Upon information and belief, at all relevant times hereto, every other Athletic Director employed by CUNY had HEO status or was reclassified to HEO status, except for the Plaintiff.  This includes, without limitation Messrs. Goldstein, Thomas, Hochberg, Kelly and McCarthy.

73.     Between 2013 and 2019, Plaintiff earned an average salary of $85,914 per year.

74.     Upon information and belief, between 2013 and 2019, the male Athletic Directors

at CUNY's other two-year community colleges earned an average salary of $106,241 per year. Consequently, during the term of her employment, the male Athletic Directors at CUNY's other two-year community colleges earned an average salary of at least $20,000 more per year than Plaintiff.

75.    By 2019, Plaintiff earned $99,581 per year.

76.    Upon information and belief, by 2019, Mr. Goldstein earned at least $128,458 per year as CUNY's Athletic Director at LCC.

77.    Upon information and belief, by 2019, Mr. Thomas earned at least $105,125 per year as CUNY's Athletic Director at KCC.

78.    Upon information and belief, by 2019, Mr. McCarthy earned at least $94,542 per year as CUNY's Athletic Director at BCC.

79.    Upon information and belief, by 2019, Mr. Hochberg earned at least $101,572 per year as CUNY's Athletic Director at QCC.

80.    Upon information and belief, by 2019, Mr. Kelly earned at least $133,676 per year as CUNY's Athletic Director at BMCC.

81.    Upon information and belief, Mr. McCarthy, who was hired in or around June 2017, was promoted from the HEA pay scale to the HEO pay scale after approximately one month of employment at CUNY's BCC campus.

82.    Immediately prior to being hired by CUNY, Plaintiff advised Ryan McCarthy while he was previously employed at Pratt Institute to enhance his skills for the CUNY position.

83.    At all times relevant hereto, every HOSTOS Departmental Director was a member of the HOSTOS Leadership Committee except for the Plaintiff.

84.    Upon information and belief, Defendant CRUZ determined the membership of the

18

HOSTOS Leadership Committee.

85.    Defendant CRUZ required the HOSTOS Assistant Athletic Director, Marquee Poole, to be mentored by the Director of Wellness instead of his direct superior, the Plaintiff.

86.    Defendant CRUZ made racially inappropriate comments to staff members including, but not limited to, calling African Americans "Hoodies."

87.    Defendants have engaged in disparate and discriminatory treatment on the basis of sex throughout the entirety of Plaintiff's employment, including, without limitation:

    a.    Failing to promote Plaintiff from a HEA position to a HEO position, while promoting or classifying every CUNY male Athletic Director to HEO;

    b.    Continuing to ignore and failing to consider Plaintiff's request for reclassification from HEA to HEO, which she made to each of Defendants DAVID GOMEZ, SOHN and CRUZ, as well as to Dean Gomez, on or about April 13, 2015 through June 2017;

    c.     Despite her persistent inquiries as to the status of her requests to be reclassified from an HEA position to a HEO position to DAVID GOMEZ, SOHN, CRUZ, and/or Dean Gomez, via at least eight emails, Plaintiff's requests were ignored;

    d.    Despite her persistent inquiries as to the status of her requests to be reclassified from an HEA position to a HEO position to CRUZ in at least five emails, her requests were ignored;

    e.    Despite CRUZ's promise via email in April 2015 to  submit her reclassification paperwork, he refused;

f.  Despite her persistent inquiries as to the status of her request to be reclassified from an HEA position to a HEO position to SOHN via at least five emails, her requests were ignored;

g.  Despite her persistent in-person communications to each SOHN, CRUZ, and Dean Gomez, Plaintiff's requests for reclassification to HEO status were ignored;

h.  Defendant SOHN indicated that for more than two years Plaintiff's reclassification paperwork sat on Defendant CRUZ's desk;

i.  SOHN, CRUZ and Dean Gomez repeatedly mislead Plaintiff for two years as to the status of her application for reclassification from HEA to HEO;

j.  Despite her persistent inquiries as to the status of her request to be reclassified from an HEA position to a HEO position, prior to commencement of this lawsuit, DAVID GOMEZ, CRUZ, SOHN and Dean Gomez provided Plaintiff with no contemporaneous excuse or justification for the failure to reclassify the Plaintiff from HEA to HEO:

    i.  Defendants never told Plaintiff that she was unqualified for promotion to HEO status;

    ii.  Defendants never told Plaintiff that she was undeserving for promotion to HEO status; and

    iii.  Defendants never told Plaintiff that her qualifications were inferior to other CUNY employees who had HEO status.

k.  Undercompensating Plaintiff by at least $20,000 per year compared with the salaries of similarly situated male CUNY Athletic Directors performing

similar work in the same workplace;

l.  Subjecting her to harassment by administrators, including yelling, cursing, insulting, demeaning and otherwise disrespecting her, such administrators including but not limited to Defendants DAVID GOMEZ, CRUZ and SOHN;

m.  Failing to adequately investigate Plaintiff's sexual harassment complaint concerning her having been physically barricaded inside a HOSTOS gymnasium equipment closet by a HOSTOS' administrative superintendent, Julio Centeno ("Mr. Centeno"). On or about September 22, 2016, Mr. Centeno demanded that the Plaintiff give him a hug and kiss in order to be allowed to leave the closet. After approximately 10 minutes of failed pleas, Plaintiff was coerced into giving Mr. Centeno a hug to gain her release. Plaintiff filed a formal complaint with HOSTOS's human resources department at the direction of the administration on or about September 24, 2016.  However, even before Plaintiff's formal complaint, HOSTOS's human resources department observed Mr. Centeno inappropriately hugging female employees but failed to take appropriate remedial or preventative action.  HOSTOS was then deliberately indifferent to Plaintiff's right to be free of sexual harassment and discrimination in the workplace where, <u>inter</u> <u>alia</u>:

      i.  Defendants violated their own written policy, the City University of New York Policy on Sexual Misconduct (the "CUNY Sexual Misconduct Policy").  As prescribed by Section XI(B) of the CUNY Sexual Misconduct Policy, a "temporary delay will generally not last more than ten days

except when law enforcement specifically requests and justifies a longer delay.  While some complaints may require more extensive investigation, when possible, the investigation of complaints should be completed within sixty (60) calendar days of the receipt of the complaint.  If there is a delay in completing the investigation, the Title IX Coordinator shall notify the complainant and the respondent in writing."

    A. HOSTOS failed to timely commence an investigation of Mr. Centeno's conduct until October 2, 2017, more than a year after Plaintiff had filed her formal complaint;

    B. HOSTOS failed to timely complete an investigation of Mr. Centeno's conduct until July 10, 2018, nearly two years after Plaintiff had filed her formal complaint; and

    C. Plaintiff was never given any notification, in writing or otherwise, that both the initiation and conclusion of the investigation were delayed;

ii. HOSTOS found that Plaintiff's allegations were substantiated, but inexplicably concluded that Mr. Centeno's conduct was merely poor judgment not sexual in nature; and

iii. HOSTOS inadequately disciplined Mr. Centeno by having merely placed a guidance memorandum in his personnel file that reminded him to act in a professional manner, which was explicitly approved by DAVID GOMEZ;

22

n.  With discriminatory animus, Defendant CRUZ regularly conferred with Plaintiff's male subordinates instead of meeting with the Plaintiff as the Athletic Director;

o.  With discriminatory animus, Defendant CRUZ regularly and habitually sought to undermine and usurp Plaintiff's authority as Athletic Director by meeting and consulting with Plaintiff's subordinates instead of Plaintiff; and

p.  With discriminatory animus, CRUZ and DAVID GOMEZ failed to allow Plaintiff to arrange any celebration of the championship of the HOSTOS Women's Basketball Team after winning the first national the first women's basketball championship for both HOSTOS and CUNY.

88.   CRUZ had been accused by at least one other female subordinate of discriminating against her by having usurped her authority and excluded her from meetings concerning matters within her areas of responsibility.

89.   Defendants created a pattern of disparate and discriminatory treatment of female employees at HOSTOS, including but not limited to:

a.  Administrators, including but not limited to Defendants DAVID GOMEZ, CRUZ, and SOHN regularly yelled at, screamed at, insulted, demeaned, disrespected and otherwise harassed only female employees;

b.  Defendant DAVID GOMEZ wielded a bat in a threatening manner to instill fear into HOSTOS female employees, including on the day after he had publicly yelled at, screamed at, insulted, demeaned, disrespected Plaintiff, which prompted other HOSTOS employees to warn Plaintiff of the danger;

    c.  Undercompensating female employees as compared to the compensation of similarly situated male employees performing equal or less work;

    d.  Failing to promote and/or reclassify female employees in a manner consistent with its promotion/reclassification of similarly situated male employees;

    e.  Failing to properly discipline and remediate Mr. Centeno's sexual harassment of female employees, including without limitation, the sexual harassment witnessed by Mrs. Shevach that preceded the sexual harassment of Plaintiff

    f.  Failing to properly investigate allegations of sexual harassment by Mr. Centeno or adequately discipline him; and

    g.  Retaliating against female employees that complained of discrimination and/or hostile work environment.

90.    As a result of complaints that Plaintiff made concerning discrimination on the basis of sex, gender, race, national origin and/or ethnicity, and hostile work environment, Defendants retaliated against Plaintiff. Such retaliation includes, but is not limited to:

    a.  On April 12, 2017, Plaintiff filed her Hostile Work Environment Complaint against DAVID GOMEZ and SOHN. In response, on or about May 5, 2017, DAVID GOMEZ and/or SOHN retaliated by initiating a sham investigation of Plaintiff with the JCOPE and/or the Inspector General's Office. As a further consequence, DAVID GOMEZ, SOHN and/or CRUZ denied Plaintiff the ability to rent HOSTOS athletic facilities, which substantially reduced the operating budget of the HOSTOS athlete department.

    b.  On January 29, 2018, Plaintiff filed a charge of discrimination with the EEOC concerning the discrimination, sexual harassment, and hostile work

environment that she had been subjected to at HOSTOS.  In response, on February 13, 2018, SOHN caused the letter of reprimand to again be placed into Plaintiff's personnel file – despite the fact that months earlier SOHN had dismissed Plaintiff's Reprimand Grievance in part on the grounds that no such letter of reprimand had been placed in her personnel file.

c.   On October 24, 2017, Plaintiff filed her Step Two Reprimand Grievance.  In response, in or about December of 2017, CRUZ caused Plaintiff to be:

     i.   excluded from meetings concerning the athletic department

     ii.   met with and gave direction directly to Plaintiff's subordinates, instead of through Plaintiff, circumventing her authority.

     iii.   stripped Plaintiff of any decision-making powers within her department; and

     iv.   reduced and relocated the staff who had reported to Plaintiff, which was fewer than any other CUNY Athletic Director and forced Plaintiff to perform the work typically performed by several people.

91.   As a consequence of the foregoing acts of discrimination, sexual harassment, hostile work environment, and retaliation by CUNY, HOSTOS, DAVID GOMEZ, SOHN, and CRUZ, Plaintiff was constructively terminated on January 15, 2019.

92.   Eric Smiles ("Mr. Smiles") was hired in 2019 and is the current Athletic Director at HOSTOS.  Mr. Smiles immediately succeeded Plaintiff after Plaintiff was constructively terminated as Athletic Director at HOSTOS.

93.   Upon information and belief, when Mr. Smiles was hired to replace Plaintiff as

25

the Athletic Director at HOSTOS, Mr. Smiles was given a starting salary of $92,688. Mr.

Smiles' starting salary was at least $21,000 more than the starting salary given that had been

given to Plaintiff approximately five and a half years prior – even though Mr. Smiles was lesser

educated and experienced than Plaintiff at their respective times of hire.

94.     Upon information and belief, DAVID GOMEZ, CRUZ, and/or SOHN reinstituted

for Mr. Smiles the authority to rent HOSTOS athletic facilities to supplement the HOSTOS

athletic department budget.

95.     When Mr. Smiles was asked to compare and contrast his duties and

responsibilities as Athletic Director at HOSTOS with those of the other Athletic Directors at

CUNY's other two-year community colleges, Mr. Smiles testified that they were, "Very similar."

When Mr. Smiles was asked to explain what he meant by "very similar," he testified:

> Well, all of us are dealing with obviously, you know, managing our
> varsity programs. We all deal with recreation and -- and intramurals
> and dealing with the campus community.
>
> We all deal with managing our facilities from day-to-day in terms of
> scheduling, dealing with external rental organizations, we all deal
> with budgeting from our, you know, dealing with purchases out of
> our budgets, maintaining our budgets and balancing our budgets. We
> all deal with academic retention of student athletes, whether that be,
> you know, progress reports, study halls, referring students out to
> tutoring, we all deal with that same area.
>
> I'm trying to think what else. You know, risk management activities,
> making sure NJCA compliance is completed correctly, attending all
> NJCA region 15 meetings, attending -- we all have to attend the
> CUNY act conference meetings, meet the liaison between our
> campuses and CUNY act region 15 the NJCAA, we all deal with
> making sure all student athlete welfare is taken care of, in terms of
> concussion protocol, physicals.
>
> So those -- those tasks are the same no matter which campus you're
> on.

96.     Indeed, Mr. Smiles testified that he could not think of any differences between his duties and responsibilities and those of any of the other Athletic Directors at CUNY's other two-year community colleges.

## FIRST CAUSE OF ACTION: AGAINST DEFENDANTS CUNY AND HOSTOS FOR DISCRIMINATION IN VIOLATION OF TITLE VII

97.     Plaintiff repeats and realleges paragraphs 1 through 96, above.

98.     As a result of discriminatory animus, Plaintiff has received disparate treatment because of her sex and gender, and was treated less favorably than male employees in the terms and conditions of her employment, in violation of Title VII.

99.     Under Title VII, it is a discriminatory practice to alter the terms and conditions of employment to affect only male employees.

100.    Defendants have offered terms and conditions of employment to male employees, that are not offered to similarly situated female employees, inter alia, opportunities for advancement and salary increases. Defendants' decisions are not justified on the basis of any bona fide occupational qualification.

101.    Defendants classified every other CUNY Athletic Director as a HEO.

102.    Defendants caused Plaintiff to be paid substantially less than the amount paid to CUNY's male Athletic Directors.

103.    Defendants caused Mr. Smiles to be paid a starting salary that was at least $21,000 more than the starting salary that had been paid to Plaintiff – despite the fact that he was lesser educated and experienced than Plaintiff at their respective times of hire.

104.    CRUZ, as an employee of CUNY and HOSTOS acting within the scope of his

duties, directed discriminatory intimidation, ridicule, insult and harassment toward female employees including Plaintiff, while treating male employees differently.  For example, without limitation, where CRUZ:

    a.   reduced and/or relocated Plaintiff's subordinate staff;

    b.   usurped Plaintiff's authority over the HOSTOS athletic department; and

    c.   excluded Plaintiff from meetings concerning the HOSTOS athletic department.

    105.   SOHN and DAVID GOMEZ, as employees of CUNY and HOSTOS acting within the scope of their duties, directed discriminatory intimidation, ridicule, insult and harassment toward female employees including Plaintiff, while treating male employees differently.  For example, without limitation, where SOHN and DAVID GOMEZ:

    a.   repeatedly, and publicly yelled, screamed, demeaned, belittled, and intimidated female employees, including Plaintiff;

    b.   retaliated against Plaintiff for having filed a written hostile work environment complaint against SOHN and DAVID GOMEZ, by initiating a sham investigation of Plaintiff by the Inspector General's Office;

    c.   retaliated against Plaintiff for having filed a charge of discrimination with the EEOC, by placing a letter of reprimand in Plaintiff's personnel file;

    d.   denied Plaintiff fair and impartial consideration and resolution of her Reclassification and Reprimand Grievance where SOHN had a conflict of interest in the proceedings but nonetheless acted as advocate for himself, HOSTOS and DAVID GOMEZ, while pretending to be a third-party neutral arbiter;

e.    intimated female employees, including Plaintiff, where DAVID GOMEZ

and wielded a bat in a threatening manner;

f.    intimated female employees, including Plaintiff, where DAVID GOMEZ

permitted and created a workplace environment where it was acceptable for

male employees to yell, scream, demean, belittle, intimidate, and act in an

aggressive and violent manner; and

g.    sabotaged Plaintiff's request for reclassification from HEA to HEO by

instructing Mrs. Shevach to submit the request to CUNY in a manner that

was defective in form and substance.

106.    Plaintiff experienced a hostile work environment as a result of the foregoing

persistent disparate treatment.

107.    The foregoing conduct was sufficiently severe and pervasive as to alter the

conditions of employment for Plaintiff and her female co-workers.

108.    HOSTOS and CUNY knew and/or should have known of the foregoing conduct

but failed to take any appropriate action thereon.

### SECOND CAUSE OF ACTION:  AGAINST DEFENDANTS HOSTOS, DAVID GOMEZ, SOHN AND CRUZ FOR <u>DEPRIVATION OF RIGHTS IN VIOLATION OF SECTION 1983</u>

109.    Plaintiff repeats and realleges paragraphs 1 through 108, above.

110.    Under Section 1983, it is unlawful for a state actor, acting under color of state

law, to deprive a person of her right to be free from discrimination on the basis of, <u>inter alia</u>,  her

sex or gender.

111.    As a public university duly organized under the laws of the State of New York,

Defendant CUNY is state actor.

29

112.    As a public university duly organized under the laws of the State of New York, Defendant HOSTOS is state actor.

113.    As employees of a public university duly organized under the laws of the State of New York, Defendants DAVID GOMEZ , CRUZ, and SOHN are state actors.

114.    Defendants DAVID GOMEZ, CRUZ, and SOHN, acting under color of state law, with discriminatory animus, have and continue to deprive Plaintiff of her right to be free from discrimination on the basis of her sex and gender, by, inter alia:

    a.  Failing to promote Plaintiff from an HEA position to an HEO position, while promoting every similarly situated male Athletic Director to HEO status;

    b.  Continuing to ignore and fail to consider Plaintiff's request for reclassification from HEA to HEO, which she made on or about April 13, 2015, despite her persistent inquiry as to the status of her request through June 2017;

    c.  Undercompensating Plaintiff by at least $20,000 per year compared with the salaries of all similarly situated male CUNY Athletic Directors;

    d.  Subjecting her to harassment by administrators, DAVID GOMEZ, CRUZ, and SOHN including yelling, cursing, insulting, demeaning and otherwise disrespecting her;

    e.  Failing to investigate Plaintiff's complaint of a male employee's sexual harassment;

    f.  Excluding her from department meetings;

    g.  Stripping her of any decision-making powers within her department;

    h.  Ignoring her request for reclassification from HEA to HEO;

     i.   Cutting her departmental budget;

     j.   Cutting her departmental staff;

     a.   Retaliating against Plaintiff for her filing a hostile work environment complaint with CUNY Campus Safety;

     b.   Retaliating against Plaintiff for her filing a charge of discrimination with the EEOC;

     c.   Subjecting Plaintiff to intimidation, ridicule, and insult, based on Plaintiff's sex and gender;

     d.   Undermining Plaintiff's right to have her Reclassification and Reprimand Grievances impartially considered and decided;

     e.   Sabotaging Plaintiff's request for reclassification by instructing it be submitted in a manner deficient in form and substance; and

     k.   Denying Plaintiff's right to have union representation present while under threat of disciplinary action.

## THIRD CAUSE OF ACTION: AGAINST DEFENDANTS CUNY AND HOSTOS FOR DISCRIMINATION IN VIOLATION OF THE EQUAL PAY ACT

115.    Plaintiff repeats and realleges paragraphs 1 through 114, above.

116.    It is unlawful under the Equal Pay Act for an employer to discriminate based on sex in pay and/or benefits.

117.    Plaintiff, a woman, was paid less than similarly situated male employees for the performance of equal work requiring equal skill, effort and responsibility, in violation of the Equal Pay Act

118.    CUNY and HOSTOS are subject to the Equal Pay Act.

119.    From 2013 to 2019, Plaintiff was the only female athletic director among all of CUNY's two-year community colleges.  As the athletic director at HOSTOS, Plaintiff was undercompensated by at least $20,000 per year as compared to the male athletic directors at CUNY's other two-year community colleges.

120.    When Mr. Smiles was hired to replace Plaintiff as the Athletic Director at HOSTOS, Mr. Smiles was given a starting salary that was at least $21,000 more than the starting salary given that had been given to Plaintiff approximately five and a half years prior – despite the fact that he was lesser educated and experienced than Plaintiff at their respective times of hire.

121.    Plaintiff satisfactorily performed her duties as HOSTOS' athletic director.

122.    Plaintiff met the required qualifications for athletic directors at CUNY's two-year community colleges, which were substantially similar to those of CUNY's male athletic directors.

123.    The job content for Plaintiff and the athletic directors at CUNY's other two-year community colleges were substantially equal where they were similarly situated and performed substantially the same work, which required equal skill, effort, duties and responsibilities.

124.    HOSTOS, with knowledge and approval of CUNY, hired and maintained Plaintiff on a lower pay scale than that of the athletic directors at CUNY's other two-year community colleges.

125.    HOSTOS and CUNY's other two-year community colleges constitute part of the same establishment pursuant to the Equal Pay Act.

126.    There are no nondiscriminatory reasons for the disparity in pay given to Plaintiff versus the athletic directors at CUNY's other two-year community colleges.

**FOURTH CAUSE OF ACTION: AGAINST DEFENDANTS HOSTOS, DAVID GOMEZ,
SOHN AND CRUZ FOR DISCRIMINATION IN VIOLATION OF THE NYSHRL**

127.    Plaintiff repeats and realleges paragraphs 1 through 126, above.

128.    Plaintiff has and continues to receive disparate treatment because of her sex and
gender, and was treated less favorably than male employees in the terms and conditions of
employment, in violation of New York Executive Law § 290, et seq.

129.    NYSHRL makes it an unlawful discriminatory practice for an employer to
discriminate against an individual on the basis of, inter alia, sex or gender, "in compensation or
in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(a).

130.    The foregoing conduct of Defendants HOSTOS, DAVID GOMEZ, SOHN and
CRUZ, constitutes the unlawful discriminatory practice of an employer to discriminate against
Plaintiff in compensation, or in terms, conditions, or privileges of employment.

131.    NYSHRL states it is an unlawful discriminatory practice for an employer "to
retaliate or discriminate against any person because he or she has opposed any practices
forbidden under this article or because he or she has filed a complaint, testified or assisted in any
proceeding under this article." N.Y. Exec. Law § 296(7).

132.    The foregoing conduct of Defendants HOSTOS, DAVID GOMEZ, SOHN and
CRUZ, constitutes the unlawful discriminatory practice of retaliation against Plaintiff because
she opposed practices forbidden under New York Executive Law § 290, et seq.

**FIFTH CAUSE OF ACTION: AGAINST DEFENDANTS HOSTOS, DAVID GOMEZ,
SOHN, AND CRUZ FOR DISCRIMINATION IN VIOLATION OF THE NYCHRL**

133.    Plaintiff repeats and realleges paragraphs 1 through 132, above.

134.    NYCHRL makes it an unlawful discriminatory practice for an employer, because
of an employee's sex or gender, "to discriminate against such person in compensation or in

terms, conditions or privileges of employment."  NYCHRL § 8-107(1)(a).

135.    Plaintiff has and continues to receive disparate treatment because of sex and gender, and was and continues to be treated less favorably than male employees, in the terms and conditions of employment, in violation of § 8-107(1)(a).

136.    The foregoing conduct of Defendants HOSTOS, DAVID GOMEZ, SOHN and CRUZ constitutes the unlawful discriminatory practice of an employer to discriminate against Plaintiff in compensation, or in terms, conditions, or privileges of employment.

137.    The NYCHRL states it is an unlawful discriminatory practice for an employer to "retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter… ." NYCHRL § 8-107(7).

138.    The foregoing conduct of Defendants HOSTOS, DAVID GOMEZ, SOHN and CRUZ, constitutes the unlawful discriminatory practice of retaliation against Plaintiff because she opposed practices forbidden under NYCHRL § 8-107.

**WHEREFORE**, Plaintiff prays that judgment be entered:

I.    On the first cause of action, under Title VII, awarding Plaintiff, Krishna Dass damages in an amount to be determined at trial, including without limitation, compensatory damages, back-pay, front-pay, punitive damages, reasonable costs, attorney's fees, and experts' fees;

II.    On the second cause of action, under Section 1983, awarding Plaintiff, Krishna Dass damages in an amount to be determined at trial, including without limitation, compensatory

damages, back-pay, front-pay, punitive damages, reasonable costs, attorney's fees, experts' fees;

III.    On the third causes of action, under the EPA, awarding Plaintiff, Krishna Dass damages in an amount to be determined at trial, including without limitation, compensatory damages, back-pay, front-pay, punitive damages, reasonable costs, attorney's fees, and experts' fees;

IV.    On the fourth cause of action, under the NYSHRL, awarding Plaintiff, Krishna Dass damages in an amount to be determined at trial, including without limitation, compensatory damages, back-pay, front-pay, punitive damages, reasonable costs, attorney's fees, and experts' fees;

V.    On the fifth cause of action, under the NYCHRL, awarding Plaintiff, Krishna Dass damages in an amount to be determined at trial, including without limitation, compensatory damages, back-pay, front-pay, punitive damages, reasonable costs, attorney's fees, and experts' fees; and

VI.    On the above stated causes of action, awarding the Plaintiff prejudgment interest, costs and such other further relief as this Court deems appropriate

Dated:  Chappaqua, New York
        December 6, 2024

                                LAW OFFICE OF TODD J. KROUNER, P.C.

                                By:    _____
                                       Todd J. Krouner, Esq.
                                       Attorney for Plaintiff
                                       93 North Greeley Avenue
                                       Chappaqua, New York 10514
                                       (914) 238-5800